## Case No. 15,977.

UNITED STATES v. OTTMAN et al.

[1 Hughes, 313.] [1]

Circuit Court, E. D. Virginia. July, 1877.

JURISDICTION OF FEDERAL COURTS—NONRESIDENTS OF THE DISTRICT—REMOVED CAUSES—CONSTITUTIONAL LAW—PLEA OF IMPRISONMENT.

1. Congress has constitutional power to confer jurisdiction on the United States courts, of suits brought against defendants non-resident in the districts where the suits are brought.

2. Congress has conferred this jurisdiction as to suits against non-residents, commenced in the state courts by attachment and removed into United States courts, by sections 2 and 4 of the act of March 3, 1875 [18 Stat. 470], "to determine the jurisdiction of the circuit courts of the United States," etc., etc.

[Cited in Kelly v. Virginia Protection Ins. Co., Case No. 7,677; Fidelity Trust Co. v. Gill Car Co., 25 Fed. 741; Romaine v. Union Ins. Co., 28 Fed. 636; New York, I. & P. Co. v. Milburn Gin & Machine Co., 35 Fed. 229; Elliott v. Shuler, 50 Fed. 456.]

3. A special plea of imprisonment is not valid in a civil action.

This is a suit in equity, commenced by process of attachment, which was brought in the hustings court of the city of Alexandria, Virginia, and afterwards, on motion of the United States, removed into this court. The demand of the United States against Ottman is for $15,000, of which $10,000 is claimed from the banking company as held for [W. H.] Ottman. At the time of commencing the suit, this sum of $10,000, alleged to have been deposited by Ottman,

1 [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

and held on deposit in the German Banking Company of Alexandria, was attached; and publication was made, as required in such cases by the laws of Virginia. There were also attached in this suit certain shares of stock in the said banking company, and in the Alexandria Marine Railway Company, amounting in approximate value to two thousand dollars. The defendant, Ottman, is a citizen of the District of Columbia, and was at the time of the issuing of process in this suit, and is now, confined in the common jail there under indictment for complicity in the larceny of $47,000 from the treasury of the United States, of which it is charged this $10,000 deposited by him in the German Banking Company of Alexandria was a part. The suit was first brought in August, 1875, and some proceedings were had in it in the fall of that year, but until recently it has been allowed to await the result of the indictment pending against Ottman in the District of Columbia, which has been mentioned. In November, 1875, special appearance for the purpose, and motion, was made by the defendant, by counsel, to quash the attachments taken out in the cause, but the motion was overruled. Thereupon the defendant entered by leave a special appearance for the purpose, and filed, January 5th, 1876, a plea setting forth that he was held in jail by the plaintiffs in the District of Columbia, and thereby prevented from defending the suit. Afterwards, in May last, the defendant filed a plea to the jurisdiction of the court, and also entered a motion to dismiss for want of jurisdiction. The plaintiffs demur to the first of the two pleas, and join in the other, and on this state of facts and pleadings the cause is now heard. Defendants' counsel also declare a purpose, if their plea to the jurisdiction is overruled, to demur to the bill, and have, in argument, set forth the grounds of their demurrer. The principal point relied on by counsel for the defendant in the argument is, the want of jurisdiction, by reason of Ottman being a non-resident of the district in which the suit was brought.

L. L. Lewis, U. S. Atty., and Jeremiah Wilson, for the United States.

Matthew H. Carpenter and Francis L. Smith, for defendant.

HUGHES, District Judge. This is an action in which the United States is complainant, and not one between citizen and citizen, in which either plaintiff or defendant must be a non-resident, in order that the court shall have jurisdiction. It is a suit which, to be effectual to secure the money claimed of the German Banking Company, must of necessity be brought in this district, and could not reach the money if brought in the District of Columbia. The object of the suit cannot be attained by suing elsewhere; and this suit, to accomplish the ends of jus-

tice by securing a trial on the merits, must proceed either in the state court or in this court. It is a case, therefore, for a liberal and not a narrow or technical construction of the law regulating the jurisdiction of the court. The provisions of law on which that jurisdiction depends are as follows: Section 1 of the act of congress of March 3, 1875, which appears as chapter 137 of the Acts of 1874–75 (18 Stat. 470), provides in substance, that the circuit courts of the United States shall have original cognizance concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, in which the United States are plaintiffs or petitioners. But no civil suit shall be "brought" before a circuit court of the United States against any person "by any original process" or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process or commencing such proceeding, "except as hereinafter provided." Section 2 provides that in any suit of a civil nature, at law or in equity, hereafter brought in any state court where the matter in dispute exceeds the sum or value of five hundred dollars in which the United States shall be plaintiff or petitioner, either party may remove said suit into the circuit court of the United States for the proper district. On being so removed, "the cause shall then proceed as if it had been originally commenced in the said circuit court." And section 4 of the act in question provides in substance, that when any suit shall be removed from a state court to a circuit court of the United States, any attachment or sequestration of the goods or estate of the defendant had in such suit in the state court shall hold the goods or estate so attached or sequestered, to answer the final judgment or decree, "in the same manner as by law they would have been held to answer final judgment or decree, had it been rendered by the court in which such suit was commenced," etc., etc. This act of congress is substantially the same as the corresponding sections of the judiciary act of 1789 [1 Stat. 73].

The decisions of the United States courts under this legislation of congress have been as follows: In Pollard v. Dwight, 4 Cranch [8 U. S.] 421, the proceeding was commenced by process of foreign attachment in the state court, and was removed by the defendants into the United States circuit court for that judicial district. The supreme court held that by appearing and pleading to issue the defendant waived all objection to the service of process. In Toland v. Sprague, 12 Pet. [37 U. S.] 330, where suit was commenced in the federal court by foreign attachment, the supreme court decided that the process of foreign attachment cannot properly issue from a circuit court of the United States against the property of a person not resident in the judicial district for which the court is held, but that if a non-resident defendant appears to such process, and pleads to issue, he waives his exemption from liability to the service of process against him, and the court thereby acquires jurisdiction. In Levy v. Fitzpatrick, 15 Pet. [40 U. S.] 171, the court says: "No judgment can be rendered by a circuit court against any defendant who has not been served with process issued against his person in the manner pointed out in section 11, Judiciary Act of 1789 (section 1, Act 1875), unless the defendant waive the necessity of such process by entering his appearance to the suit." In Day v. Hayward and Chaffee v. Same, 20 How. [61 U. S.] 214, the court held in the general terms which it had used in Levy v. Fitzpatrick [supra]. That case was one where the suit was brought in the United States circuit court against a non-resident, and, on failure of the marshal to find the defendant, process of attachment had been taken out against the defendant's estate in accordance with the practice observed in the courts of that state. At the hearing the defendant had not appeared nor pleaded to issue, and it was held that there was no jurisdiction. In Herndon v. Ridgway, 17 How. [58 U. S.] 424, which was a suit in equity against several defendants who were non-residents, and who had not been served with process, the court said: "The jurisdiction of the circuit court over parties is acquired only by a service of process or their voluntary appearance. It has no authority to issue process to another state. In the present case the defendants decline to appear, and process cannot be served, so that the court is without jurisdiction over the essential parties to the bill." In Sayles v. Northwestern Ins. Co. [Case No. 12,421], it was decided that where a suit was commenced by foreign attachment in a state court, if the defendant appear there, and by motion remove the cause to the circuit court of the United States, it is then too late to object to the jurisdiction of that court, or to raise the objection in the United States court of non-residency in the judicial district. Five years after the decision of the supreme court in Day v. Hayward [supra], which was the latest of the cases cited above, the case of Barney v. Globe Bank of Boston [Case No. 1,031], was decided. It was there held that a suit commenced in a state court by attachment upon property of a non-resident defendant, without personal service upon the defendant, was within the meaning of the law of the United States relating to the removal of suits, and that the federal court has jurisdiction of the cause, if properly removed, whether the defendant appears or not, although it would not have jurisdiction to compel the attendance of defendant if the suit had been originally brought in that

court. In the cases Pollard v. Dwight, Sayles v. Northwestern Ins. Co., and Barney v. Globe Bank of Boston [supra], the suits were commenced by attachment against the property of the non-resident defendant in the state court, and in each case the suit was removed into the federal court on the motion of the defendant. ' In each case the jurisdiction of the federal court was sustained. In the cases in 12 Pet. [37 U. S.j 330, and 20 How. [61 U. S.] 214, suit was commenced by attachment in the federal court. In one of them the defendant appeared and pleaded to issue, and was held to have waived thereby his right of objection to the jurisdiction. In the other the defendant did not appear or plead to issue, and it was held that there was no jurisdiction to compel him to do so. In the cases in 15 Pet. [40 U S.] 171, and 17 How. [58 U. S.] 424, it was decided, generally, that judgment or decree cannot be rendered against a defendant unless service of process has been made upon him in the manner required by the 11th section of the act of 1789 (section 1. Act 1875).

The case now before us being one properly commenced in a state court, and properly removed to the federal court, it would seem to fall within the control of the decisions in Pollard v. Dwight, Sayles v. Northwestern Ins. Co., and Barney v. Globe Bank, and, being dissimilar in essential particulars from those in Peters and in Howard, which were not removed suits, would seem not to be governed by those cases. There can be no doubt that the suit was rightfully brought in the state court. It is not pretended but that that court possessed full jurisdiction to entertain and proceed in it. There can be no doubt that it was a removable suit, and that it has been removed here regularly, legally, and by proper proceeding. Indeed, counsel for defendant argued affirmatively that all these things were so, except the second proposition, as to which they maintain that it ought to have been a suit at law, and not in equity. They only contend that. now that the suit has got here, this court cannot proceed with it, for want of jurisdiction to proceed. But I think jurisdiction to remove carries jurisdiction to proceed. Section 1 of the act of 1875 provides only that such a suit as this shall not be brought here by original process. As this suit was not originally brought here, nor brought here at all by original process, that prohibition of the statute is not violated. True, the statute requires that. after a suit is removed here, it shall be proceeded in as if it had been originally commenced here, and it is contended that this requirement means only as "if originally commenced" here, and that inasmuch as the suit could not have been commenced here at all, it cannot be proceeded in here at all. Such a construction of the clause relied on would lead to the mockery of allowing a cause,

proper for removal under the law, to be removed only for the purpose of turning it out of court. Such a construction is, of course, not to be given, if it can be avoided. Happily, this construction is especially forbidden by section 4 of the act, which makes an exception to this requirement of such suits as are commenced in state courts by attachment, and provides that, where any removed cause has been so commenced in the state court, such attachment shall hold the goods in the same manner as by law they would have been held to answer final judgment or decree, had it been rendered by the court in which such suit was commenced. This provision would be a mockery if the view of the defendant's counsel were correct. How could the money attached in the hands of the German Banking Company be held in this cause for such decree as the state court could have given, if no further step could be taken here, especially if, · as defendant's counsel contend, the suit cannot now be remanded to the state court? Surely congress could not have intended that such an absurdity of consequences should be reached by judicial proceedings taken under its legislation.

The view of Mr. Justice Curtis, fully sustained by Judge Shipman, ought therefore in my judgment to prevail, that if the suit be one rightfully brought in the state court, and which the act of congress authorizes to be removed thence into the federal court, the very fact of authority to remove empowers the federal court to take jurisdiction and proceed in the cause; the only real question in that court being, was the suit rightfully removed? If a cause has thus come into the federal court, then. section 4 of the act empowers and requires that court to go on with it, and to give such decree against the property attached as the state court should have given if the suit had remained there. Congress has full constitutional power to give the United States courts jurisdiction over defendants non-resident in the districts in which suits against them are brought; and it has, in sections 2 and 4 of the statute under construction, given this power in the single instance of suits commenced by attachment in state courts, and removed into United States courts. This can easily be made apparent. It must not be overlooked that section 1 avoids the use of such language as would embrace removed attachment suits commenced in state courts, in the class of suits in which, in order that the federal courts may have jurisdiction, it requires that defendants must live, or be served with process, in the judicial districts where the suits are brought. As if to discriminate attachment suits removed out of state courts, from suits commenced in the federal courts, section 1 is particular to say that no civil suit shall be brought in a federal court by any original process, in a district where the defendant

is not a resident, or is not found; leaving suits commenced by original process in state courts out of its purview, to be governed by the provisions of sections 2 and 4, which follow. Section 1, 2, and 4 must of course be construed together. When so construed, they induce the following reasoning and lead to the following conclusions: Under section 1, jurisdiction over non-residents is, in general, not given to the federal courts in any suit commenced by original process in the federal courts; but under sections 2 and 4 these courts may acquire such jurisdiction, by removal, over attachment suits commenced by original process in state courts. For sections 2 and 4 give jurisdiction of removed attachment suits commenced by original process in state courts, and this jurisdiction of such suits is good over non-residents, unless it is prohibited by section 1. But section 1 avoids such a prohibition, for its limitation of jurisdiction only applies to suits commenced by original process in the federal courts; these limiting words not only not applying to removed suits commenced by original process in the state courts, but necessarily implying that jurisdiction in such suits is left to be determined by sections 2 and 4. Moreover, even if the words "no civil suit shall be brought by any original process" in the federal courts against a non-resident could be construed as denying jurisdiction of suits brought by original process in the state courts,—even in that event the words at the end of the same clause, "except as hereinafter provided," would require that the provisions in regard to attachment suits removed from state courts under sections 2 and 4 should be construed as falling within the exception. I must, therefore, overrule the plea to the jurisdiction, and deny the defendant's motion to dismiss for want of jurisdiction.

As to the plea of imprisonment, personal appearance is not essential in a civil action, and a defendant may be required to make defence by counsel to such an action, while in jail. This point has been already overruled in this cause on the motion to quash. See Slade v. Joseph, 5 Daly. 187, and Olery v. Brown, 51 How. Prac. 92. As to the objection intended to be raised on demurrer, that this being a case in which there is claimed to be complete and adequate remedy at law, equity has no jurisdiction, it is enough to say that this suit was brought in a Virginia state court, and that under the laws of Virginia, resort may be had by any creditor to a court of equity for an attachment to enforce a purely legal demand against a non-resident defendant. The statutory provisions allowing this remedy may be found in the state Code, and in sections 7, 37, and 181 of Daniel on Attachment. The defendant's intended demurrer to the bill on this ground is therefore overruled. So is his objection to the bill on the ground of multifariousness. The bill has but one

object, to secure the payment of the debt directly by the defendant himself, and indirectly by his debtor, the German Banking Company. It is therefore not multifarious. A decree will be entered in accordance with this opinion.