## FIDELITY TRUST Co. *v.* GILL CAR Co.

*(Circuit Court, S. D. Ohio.* December 2, 1885.)

**1. REMOVAL OF CAUSES — JURISDICTION OF FEDERAL COURT DEPENDS ON THAT OF STATE COURT.**

If there be in the state court an entire absence of jurisdiction of the subject-matter of the suit, on removal the federal court can have no jurisdiction of the case, although it might have been brought originally in that court. This is not a mere technical feature of the situation, but a matter of substantial right arising out of the necessity of bringing the defendant into court by potential process before there can be "a suit" to be removed.

**2. FORECLOSURE OF MORTGAGE — EFFECT OF THE INSOLVENCY LAWS OF OHIO — REVISED STATUTES OF OHIO, §§ 6335 ET SEQ. — EXCLUSIVE JURISDICTION OF THE PROBATE COURT DENIED — EQUITY JURISDICTION OF THE COMMON PLEAS SUSTAINED.**

If a bill to foreclose a mortgage be filed in the court of common pleas, after a general assignment by the mortgagor and the qualification of the assignee in the probate court, the general equity jurisdiction of the common pleas is not ousted by the probate court proceedings under the insolvency laws of Ohio, the jurisdiction of the latter court not being exclusive. Wherefore, the suit may be removed from the common pleas to the federal court, where the plaintiff is entitled to a decree as if the case had been originally commenced in that court.

**3. SAME — GENERAL AND SPECIAL COURTS — JURISDICTION.**

It is a general rule of law that a jurisdiction conferred upon a special tribunal does not oust that of the courts of general jurisdiction, unless there be a plainly manifested intention of the legislature to that effect, to be derived from the words of the statute, or a necessary implication therefrom.

**4. STATUTES — CONSTRUCTION OF — LEGISLATIVE INTERPRETATION.**

The legislature should not be held to have interpreted a former statute in a given way because, on the suggestion of a judicial opinion of the supreme court, it has amended a defect in the law, notwithstanding the reasoning of the opinion may support that interpretation; particularly, if the amendment be as reasonable under some other construction of the statute.

In Equity. Bill to foreclose a mortgage. The facts are stated in the opinion of the court.

*R. H. Platt* and *R. C. Dale,* for plaintiff.

*R. A. Harrison, W. J. Gilmore, Jordan & Jordan,* and *Taylor & Taylor,* for defendant.

HAMMOND, J. This bill was filed originally in the court of common pleas of Franklin county to foreclose a mortgage. That court is the one of general jurisdiction in that county for such purposes under the laws of the state of Ohio. A demurrer was filed denying its jurisdiction, because it appeared by the bill that subsequently to the mortgage the mortgagor had made a general assignment of all his property for the benefit of his creditors; that the assignee had duly filed the assignment, given bond, and qualified as required by law in the probate court of the proper county. Pending that demurrer the cause was removed to this court by the plaintiff, where the demurrer upon the pleadings as they then stood was overruled by our Brother SAGE, and the parties were required to answer. The answer of the assignee shows that he was proceeding with all reasonable speed to administer his trust according to the requirements of the law in that behalf. The case is set down for hearing on the bill and answer.

The jurisdiction of this court is denied, and that is the sole question involved in the case as now presented. It is not denied that this court would have had original jurisdiction to maintain the bill, for it is conceded that neither by legislation nor otherwise can a state restrict or impair the jurisdiction of the federal courts as established by the constitution and laws of the United States, whether exercised by original process or by that of removal from the state courts. But it is said that where a cause is removed from a state court, the jurisdiction of the federal court over that particular suit is in a certain limited sense a derivative jurisdiction, so that if the state court have no jurisdiction over the subject-matter or the parties the federal court can have none, although it might by some other suit originally brought or removed acquire jurisdiction over the controversy between the parties, and I have no doubt that is the law.

There is some force in the argument that when the parties stand face to face in a court of competent jurisdiction to settle the controversy, it is not of material importance to inquire how they got there, nor whether some other court in another dominion would have had the power to try the case, and that our own jurisdiction over the subject-matter is that which concerns us, and not that of the court of common pleas. There is also force in the position that congress intended, by the removal acts, as well as by the judiciary act conferring original jurisdiction over controversies between citizens of different states, to put in force in the most plenary manner the judicial power of the United States over such controversies, and to transfer them bodily at the request of either party into its own courts. But this line of argument overlooks certain essential features of every jurisprudence, and subordinates to a general principle of undoubted soundness important rights of the parties connected with the details of every litigation concerning their controversies. Not only must there be a controversy, but as well always a form of procedure of some kind, possessing all the necessary elements of a "suit" or "case" in court, the most important of which is, no doubt, that there shall be a tribunal authorized to issue that indispensable notice which we call a writ or process, to bring the parties together in the court; and this must be not only sufficient in form and in fact, but in legal and technical effect, to constitute a "suit" or "case," which can only be when the tribunal undertaking the initiatory steps is duly authorized to do that thing and proceed with the matter of adjudging between the parties, either for itself or by transferring that function to some other tribunal, likewise duly authorized to proceed to judgment. Whatever may be said as to the proper definition of the term "suit" or "case" in other respects, in this process of inaugurating the procedure by which the controversy is to be judicially determined there must be, *ex necessitate rei,* a court having power to set in motion the machinery of the law, and this we call its jurisdiction over the subject-matter; while that effectual service of its notice which is legally potential to

bring the parties before itself, or whatever proper tribunal may proceed further in the progress of the "case," we call its jurisdiction over the parties.. Both must at some time concur to establish a lawfully constituted "suit" by which the controversy is to be adjudged, either in the court issuing the process or in any tribunal to which it may be removed for judgment. The act of congress does not provide for the removal of the controversy alone, and this separate and apart from the suit, but only "any *suit* of a civil nature, at law or in equity, now pending, or hereafter to be brought, in any state court, * * * in which there shall be a controversy between citizens of different states," etc. Act March 3, 1875, § 2, (18 St. 470.)

Now, if a citizen of Pennsylvania, holding a promissory note made by a citizen of Ohio, on which he desired to bring suit, should go into a state court of exclusive criminal jurisdiction, file his complaint, sue out his writ of summons, have it served in the usual way, and then remove the controversy into this court, could it be pretended that we should retain the jurisdiction on the grounds urged here? I think not. All the forms of a suit would exist in appearance; a court, process executed, and pleadings adapted to the purpose, but there would be no "suit" in court any more than if the proceeding had been commenced in a moot court, such as are organized in law-schools to teach practice. I do not mean to say that we measure our jurisdiction wholly by that of the state court, and that nothing can be adjudged here which could not have been adjudged there; for cases can be well imagined where this ruling should be subject to qualification, but not in its essential requirements. It may be that over the controversy embodied in the suit we should have here a fuller power of judgment than was possessed by the state court; or, on the other hand, that court may have had a more enlarged power than has been given to us; and it may be that we should, as the case required, extend or restrict our adjudication, as by our own rule of judgment we should be compelled to do; but, still, the fundamental principle would co-exist with that state of circumstances, and we should have "a suit" pending in the state court in some other sense than that of mere form, and which could be removed here in some other sense than that of having a controversy over which our own jurisdiction was plenary, although the state court could have had none at all. The opinion I wish to express is confined to this: that wherever there is a total absence of jurisdiction over the subject-matter in the state court, so that it had no power to entertain the suit in which the controversy was sought to be litigated in its then existing or any other form, there can be no jurisdiction in the federal court to entertain it on removal, although in some other form it would have plenary jurisdiction over the case made between the parties. This is not a mere technical necessity of the situation, but a matter of substantial right, which demands that before a defendant can be required to submit his case to any court the legal methods of procedure appointed by law

must be pursued in constructing "the suit," which is made the vehicle for bringing the controversy into court. The plaintiff cannot bring the defendant into court in any way that suits his convenience or his whim, but must do it in the manner pointed out by law. If he choose to take action in a state court, and then remove the suit here, the plaintiff should have a care that the state court has the necessary jurisdiction to furnish the stock on which to graft our proceedings, whatever may be the outcome of a difference in the two jurisdictions.

The case of *Kelly* v. *Virginia Ins. Co.*, 3 Hughes, 449, does not establish a contrary doctrine, however broad its expressions may be. There the question was one of mere locality of jurisdiction, or, to speak perhaps without entire accuracy, of *venue* only. The federal court had jurisdiction of the particular territory in which the suit was brought, while the corporation court from which it was removed did not have jurisdiction of the place where the defendant was located, and the plea was that the state court did not have jurisdiction because neither the plaintiff nor defendant resided in the city, nor did the cause of action arise there. Perhaps this was an entire absence of jurisdiction over the subject-matter and would invoke the ruling I make; but I doubt if the court intended in that case to go as far as counsel would press it here. Section 6 of the act of 1875, above cited, provides that all suits removed shall proceed in this court as if the suit had been originally commenced here; but this presupposes "a suit" in the sense I have defined it, and I think the court understood the Virginia case to be such a suit, defective only as to the locality, which defect had in itself no application to the federal court. It is quite another thing to apply that principle to an entire absence of jurisdiction of the subject-matter of the litigation, and I do not believe that court would so apply it. It would be a mere literalism to construe that section and the case there decided as counsel here construe it, and would render nugatory the important right of the defendant which I have endeavored to point out as lying at the base of this contention. Neither does the fact that the federal court may in some cases, through a removal, acquire a jurisdiction it did not originally possess, strengthen the plaintiff's contention, but rather the contrary; for it is the jurisdiction of the state court at last that supports, in such cases, the federal jurisdiction, and very much in the same way I have indicated that our jurisdiction in this case must be supported. *Bushnell* v. *Kennedy*, 9 Wall. 387; *Gaines* v. *Fuentes*, 92 U. S. 10; *Kern* v. *Huidekoper*, 103 U. S. 485; *Claflin* v. *Com. Ins. Co.*, 110 U. S. 81; S. C. 3 Sup. Ct. Rep. 507; *Southworth* v. *Adams*, 4 Fed. Rep. 1; *Barney* v. *Globe Bank*, 5 Blatchf. 107.

Again, under the old removal act, where the defendant alone could remove, it was held that after he appeared for *that* purpose, he appeared for all purposes, and could no longer object to the jurisdiction. But I think in every case it will be found that this was only as to that class of objections which relates to the service of process by

which jurisdiction of the person is acquired, and which he might waive. None was a case where the contention was that, admitting the jurisdiction over the person, there was also a total absence of jurisdiction of the subject-matter in the state court. Of course, where the process is served, or its service is waived, there is no longer any failure of the suit for that defect, and the jurisdiction in that regard is complete; but the want of jurisdiction over the subject-matter is a different thing and lies behind the other, necessarily vacating and avoiding the process and its service. The cases are ably reviewed in *U. S.* v. *Ottman,* 1 Hughes, 313, which is cited in the case of *Kelly* v. *Virginia Ins. Co., supra,* and their operation explained by the same learned judge who there says, in so many words, that the suit must be rightfully brought in the state court. His language in that case explains his meaning in this, and, taking the two together, I have no doubt he has been misunderstood by counsel here when they insist that he holds that it is immaterial whether the state court had jurisdiction of the subject-matter as long as we have jurisdiction of it. But there is even a conflict in our courts whether this established rule under the old removal acts that the defendant, by removal, waived all questions of personal jurisdiction, applies under the act of 1875. *Hendrickson* v. *Chicago, etc., R. R.,* 22 Fed. Rep. 569; *Parrott* v. *Alabama, etc., Ins. Co.,* 4 Wood, 353; S. C. 5 Fed. Rep. 391; *Hale* v. *Continental Ins. Co.,* 20 Blatchf. 515; S. C. 12 Fed. Rep. 359; *Edwards* v. *Connecticut Ins. Co.,* 20 Fed. Rep. 452. In this last case, like the Virginia one, there are some expressions that would seem to indicate that the jurisdiction of the state court over the subject-matter is immaterial; but, like the other, it was more a question of venue than anything else, and it was held that the defendant had waived the objection because he had himself appeared to remove the suit. I think it was not intended there to hold a different rule than that which I am seeking here to sustain. And in *Simpkins* v. *Lake Shore R. R.,* 21 Blatchf. 554, S. C. 19 Fed. Rep. 802, it finds support, though this also seems to have been somewhat a case of *locality* presented in a novel phase. The state court had no jurisdiction because the statute of the state had restricted its jurisdiction unless *the plaintiff* were a resident of the state of New York, which was denied. The court says:

"If the plaintiff be a non-resident, as the answer asserts, the action would have failed in the state court for want of jurisdiction, and must therefore fail here, notwithstanding the plaintiff, if a non-resident, may also be an alien, and the action for that reason one which this court is competent to entertain. For, it is the cause instituted in the state court which is to be determined by this court, and the plaintiff's residence, if fatal to the action in case it had remained in the state court, must be fatal here."

And the court retained the case for the trial of that issue. Also the word "suit" in the removal act is construed by the court very much as I construe it here, in *Re Iowa, etc., Construction Co.,* 2 McCrary,

178; S. C. 6 Fed. Rep. 799. In *Woolridge* v. *McKenna*, 8 Fed. Rep. 650, 673, I held that an infant defendant must be served with process in the state court before there could be a removal of any "suit," as otherwise she was not in court at all and could not be. And here the distinction between the old and the new removal acts must not be overlooked. Under the old, where a defendant alone could remove, his appearance brought him in always; but under the new, where the plaintiff may remove, the question of whether the defendant is in court becomes more and very important. In *Werthein* v. *Continental Ins. Co.*, 11 Fed. Rep. 689, the jurisdiction of the state court would seem to have been necessary if it had not been waived, and in *Small* v. *Montgomery*, 17 Fed. Rep. 865, it was not waived by special appearance. And see *Sayles* v. *Insurance Co.*, 2 Curt. 212.

This conclusion makes necessary a determination in this case of the far more troublesome question whether or not the court of common pleas had any jurisdiction of the subject-matter of this suit. The argument that it had general jurisdiction of such suits does not meet the exigencies of the case above suggested; for that court must have had jurisdiction of the subject-matter *of this particular suit*, and under its own circumstances. If its general powers have been restricted by legislative act so that it was deprived of the jurisdiction of the subject-matter of this controversy, the case is the same in principle as if the general jurisdiction did not exist, so far as this suit is concerned. The existence of that general jurisdiction is a strong argument against any legislative intent to take it away in cases like this; but, within itself, it cannot prevail to support this suit if the legislative intent be manifest. Independently, on my own judgment, I should not hesitate to hold that the legislature did not intend by these insolvent assignment laws to deprive creditors of their ordinary remedies against their debtors, but only to provide through the probate court a speedy method for the administration of that trust created by the assignment, auxiliary to the ordinary powers of such trustees. Rev. St. Ohio, §§ 6335 *et seq.*

In the first place, there is nothing in the act which in express terms says that creditors shall be so deprived, and I do not understand that it is claimed otherwise than by implication, and this upon the application of the familiar rule that a court with concurrent jurisdiction is ousted if, by a proper proceeding, another court of like jurisdiction first acquires control of the suit or subject-matter.

In the next place, there is nothing in the act which seems to be aimed at the ordinary remedies of creditors in the courts having general jurisdiction to enforce their rights; there are no statutory injunctions provided for, no especial mode of bringing in the creditors to inaugurate in that court their respective suits, no methods of procedure or the like, and no machinery provided as a substitute for that ordinarily belonging to them. All this is left also to implication. It is true, a publication in a newspaper of the county is provided for; but that is

limited in its terms to notice by the assignee of his appointment as such, and seems wholly inadequate to the kind of notice that would reasonably have been required if it were the intention to make every creditor formally a party to the proceeding in the probate court and exclude him from all other remedies he might have been entitled to but for the institution of this general suit to settle all controversies. There is no provision for making the debtor himself, often an important party to such proceedings, a party to this, and for subjecting him to any control of the court, either for the purposes of any judgment whatever in his favor or against him, or for the purposes of his examination as a witness, or that of other witnesses, and the ascertainment of the facts, equal to those before enjoyed. On the contrary, the statute seems to contemplate that whenever any suit is necessary, there must be a resort to other courts of ordinary jurisdiction; for, even as against the assignee, to say nothing of the debtor, if he shall reject the creditor's claim, the latter must bring suit in the ordinary courts to have it allowed; and in case of real estate, at least, the assignee may himself resort to the court of common pleas to invoke the general equitable jurisdiction of that court to disentangle the liens and adjust the titles. Rev. St. Ohio, §§ 6351, 6352. Now, this all seems to me to be inconsistent with the notion that, by the filing of the assignment, the giving of the bond, the qualification of the assignee, and the publication of the notice of his appointment, the probate court, (which is, under the constitution and laws of Ohio, a court of limited and inferior jurisdiction,) without more, can proceed and settle all differences with creditors, foreclose mortgages, and conduct all suits, as has been argued here. It does not seem quite consistent with the statute to say that the probate court shall have jurisdiction, even on a plenary petition filed in that court for the purpose, to entertain a formal suit for a judgment at law or a decree in equity. Else, why say that the creditor, if the assignee rejects his claim, shall bring suit elsewhere, or permit the assignee to go to a regular court of equity, when he needs the plenary power of such a tribunal to assist him further in his duties? The statute does not point out any remedy in that court by petition or otherwise, provides no process, and does not seem to have such a proceeding in view at all. It is to be observed that the larger part of this statute is directed towards the assignee; and if the construction contended for is correct, *he* is vested with large *quasi* judicial powers, and not the court. It is *he* who is to proceed at once to convert the assets by sale and make return to the judge, *he* who allows and rejects claims and makes report thereof, etc.; and he does this under the supervision of the court, and ample powers are given by the statute for that supervision; but the whole frame-work of the statute shows that the functions of the court are rather supervisory of the assignee, than those of a tribunal exercising the ordinary functions of conducting a general creditors' bill or suit in equity, involving all controversies with parties claiming an interest in the subject-mat-

ter. Section 6351 in this Revision precedes section 6354, but I take it from the citations to original sources that in fact the latter section was first enacted by the legislature, in the order of the several statutes, and it suggests itself to me that the assignee, in making his allowances and rejections and submitting his report, originally passes on the question of liens and priorities in that report, and that it is upon that basis the court acts under section 6351, of course with full power of supervision and control, and that the matter of liens and priorities is not withdrawn wholly from the assignee and devolved on the court as it might seem to be; but that in this, like the rest, it is *supervisory* only, and not original action by the court. If this be so, it weakens the position that section 6351 confers the ordinary jurisdiction of a court of equity on the probate court over all incumbrances and liens and the parties engaged about them, and brings this matter of the allowance or rejection of incumbrances, liens, and priorities, like all other "claims," within the purview of section 6352, so that if the assignee and the "claimant" of a lien or priority disagree about its being a lien or priority, the "claimant" shall, within 30 days, bring his "suit" under that section; thereby making the whole statute consistent with the general purpose.

That general purpose, in the features we are now considering, I should say is one of *regulation* by the court, rather than one of *adjudication*, as upon a plenary creditors' bill in equity in a court possessing the ample powers of such courts, with all parties in interest before it and engaged in a general settlement of any and all of their rights, respectively. This probate court lays hold of the assignment and of the assignee, and regulates, supervises, and controls *him* in the administration of the trust wherewith he is charged, and, incidentally as it were, deals with all questions and persons who come within the operation of that administration in the fullest manner as long, but only so long, as the assignee acts in harmony with the parties interested and no adverse or hostile contention arises. For which general purpose the court may examine the debtor or other persons, make orders and decrees of control in the premises, and generally direct and regulate the administration of the trust under the assignment. And *this* power of regulation and control is *exclusive* in that court, except where the assignee is vested with a discretion to go elsewhere. But the moment an adverse, formal, and plenary *adjudication* at law or in equity is required, even as between the assignee and "claimants," the statute especially directs "suit" to be brought (section 6352) to settle it, which precludes the idea that the proceeding in the probate court is a "suit" for that purpose. But I think the statute shows on its face that the legislature confined itself to making a provision for the auxiliary regulation of the assignee and the administration of his trust, and did not by implication intend to sweep out of existence all remedies by or against the creditors in other courts. It left them entirely free to pursue any remedy at law or in equity that they might

choose, so that if one wished to bring his action at law, and procure judgment against *the debtor,* he could do so; the direction of section 6352 being confined to a "suit" against *the assignee;* or if one desired to resort to a court of equity to enforce his "lien" or "encumbrance" or "priority," he might do so, making the assignee a party, of course. It was decided in *Claflin* v. *Robbins,* 1 Flip. 603, that a proceeding against the assignee under section 6352 was removable to the federal court. And if the assignee desires to enjoin such proceedings as dangerous to his rights, or as interfering with his title or trust, he, likewise, by direction of the probate court, exercising its power of regulation, or of his own motion, may resort to the courts of general jurisdiction to protect his trust and the property in his charge; and this he may do by cross-bill or independent suit, all parties thus having the utmost freedom to resort to those courts established by law to settle all their controversies, as well those arising out of an insolvent assignment as others. And this is not hostile to or inconsistent with the amplest and most exclusive jurisdiction of the probate court to regulate and control the administration of the assignee's trust, but is indeed in aid of that control and a necessary supplement to it; for that court is not armed with all the power of the other courts, as we have seen.

But we must not fall into a confusion of ideas here, and must carefully separate this question of the jurisdiction of the courts over the remedies of the creditors from another and distinct branch of the statute, namely, its effect upon the liens, titles, and interests of the creditors in the property involved. That is an entirely different matter, and is material here to show, not only the harmony of the construction that has been suggested, but also the character of the decree to which the plaintiff may be entitled if the jurisdiction be maintained, —a matter that has not been at all discussed at the bar in this case. This distinction has been pointed out by the late Judge WILLSON in reference to the effect of these very Ohio statutes on our federal jurisprudence, and likewise acted upon by our Brother WELKER, of the Northern district of Ohio. *Burt* v. *Keyes,* 1 Flip. 61; *Claflin* v. *Robbins,* Id. 603. If the creditor who brings his suit at law against the debtor issue an execution on the judgment, it would be an independent question as to the relative rights of himself as a judgment creditor and the assignee over the property, as any one can readily see; and it may be necessary for either to resort to the courts of law in suits of trespass, trover, detinue, and the like, or to the court of equity for injunctions or other equitable relief to protect the respective rights of either. So, if the creditor has a mortgage, it may be also necessary to resort to such suits to test the relative rights of the creditor and the assignee; but in all those cases this statute would operate to show that the legislature had provided a means by which the assignee may have sold, or may, pending any suit, proceed to sell, the property in controversy, unless restrained in a proper case by the

court of general equity cognizance, freed from all liens whatever; thereby transferring all those liens to the fund in the assignee's hands, where alone, after such a sale, can they be satisfied. Therefore, in such contingencies, the creditor would take nothing by his judgment and execution or foreclosure except what he should get in the administration of the estate; but it does not follow from this that the court had no jurisdiction to give the judgment and issue the execution, or no power to foreclose the mortgage at the suit of the creditor, if the assignee had not himself sold the property previously to its seizure by the equity court. If he has done that, the decree could be only that he pay over the funds, retaining his surplus; if he had not so sold it, the decree would be that the equity court would sell the property, paying the mortgage creditor and delivering the surplus to the assignee; thereby accomplishing the same result. The fact that the assignee, under the regulation of the probate court, has power to sell the property discharged of all liens does not necessarily prevent the equity court from proceeding to a foreclosure if the court can lay hands on the property itself before the assignee has sold, or on the substituted fund afterwards. Whether the courts would, in a given case, do any of these things depends on the peculiar circumstances of each case, but whatever they may do, they can and will, in all their dealings with the parties, secure whatever title the assignee may have under his deed as interpreted by this statute; protect him in the discharge of his trust; enforce the rights, whatever they be, of all parties, according to the law of the case, including this statute; and finally in this, as in other things, use their powers to carry out the contracts of all concerned, the assignee included.

But it seems to me plain that whatever the courts of general cognizance may or may not adjudge in a particular case as to all this mass of rights arising out of the assignment and other contracts of the parties, this in no way affects the question whether, *proprio vigore*, this statute transfers the exclusive jurisdiction of all controversies over that mass of contract rights to the probate court, and that *that* question depends on the language of the act and its necessary implications, and not in any sense on the effect of the assignment upon the rights of the creditors. If, for example, a creditor should sue the assignee for a conversion arising out of a sale made under the powers conferred by this statute, it is not a question of *the jurisdiction of the probate court*, exclusive or concurrent, but *one concerning the title of the assignee*, and his power over the property under the assignment, as regulated by this statute. If that power be not exceeded, but properly exercised, the assignee is protected, not because the probate court has jurisdiction to direct the sale, concurrent or exclusive,—certainly not because no other court can acquire jurisdiction over the property,—but simply for the reason that, by virtue of the assignment and sale made under this statute, the assignee has passed the title properly discharged of the liens or claims of creditors,

and transferred whatever liens exist about it to the fund in the assignee's hands. Such was the case of *Lindeman* v. *Ingham*, 36 Ohio St. 1, so much relied on in the argument, which was a suit for such a conversion, and the plaintiff failed because the assignee had a right to do what he did do, and the probate court the power to direct him to do that thing, and not because that court had *exclusive* jurisdiction over all suits at law or in equity between the parties, or any jurisdiction whatever over such suits. The creditor had his remedy to go into the probate court to have his claim allowed, including the recognition of his lien; but I think the case does not sustain the position that a court of equity, on a proper suit brought, might not have acquired jurisdiction to foreclose the mortgage if it had, for good reasons appearing to the court, found it necessary at the suit of the creditor to do so. That question was not at all before the court, and was not at all considered. What is said is consistent with the construction I have suggested, and the application sought to be made in argument here is an unwarrantable implication based on language pertaining to a wholly different subject. The case only establishes that a prior mortgagee, who has stood by and seen the assignee execute his powers under this statute through the probate court, cannot hold him for a conversion, and can after such a sale seek his remedy only in the probate court, where, if the parties cannot agree, provision is made for a suit in some other court which may require the assignee to allow his claim, which provision would seem to sustain the idea that the proceeding in the probate court is not in any sense a general suit to settle all controversies, but rather one of administration without capabilities in that direction.

The case of *Dwyer* v. *Garlough*, 31 Ohio St. 158, was a suit to foreclose a mortgage in the equity court, and the very contention made here by defendants' counsel was made there, and the court intimates, undoubtedly, that the point was well taken but for the fact that in that case extraordinary relief was required to foreclose the wife's dower, which the probate court then had no power to do, but has by subsequent legislation acquired, no doubt, because of the suggestions of that case; and it is argued here that this amendatory legislation is a legislative construction in favor of the principle intimated by the supreme court and so earnestly urged at this bar. If we were satisfied that the supreme court of Ohio intended to so construe this statute, we should unhesitatingly yield any judgment of our own with great cheerfulness to theirs; but I am informed by counsel here and others at the bar that neither the other state courts, nor the profession generally, have any uniform opinion on this subject, and that the practice and rulings are in much conflict because the point is not considered as at all settled by either of these two adjudications, which are the only cases pertinent to the question. Technically, the last cited case is no more than the other an adjudication of the point; for it was held that the jurisdiction of the common pleas had not been ousted as long

as the probate court had no power to foreclose the wife's dower, and this was all-sufficient to determine the case. It remains to be seen whether the supreme court of Ohio, now that the legislature has extended the power of the probate court and permits it to foreclose the wife's dower, would hold the jurisdiction exclusive. It does not necessarily follow that it will when that point comes more directly in judgment. It does not even logically follow that it should, and there is nothing in the principle of *stare decisis* to demand it. It is well known that courts narrow the effect of a decision in this regard to the precise point adjudicated, and do not follow the reasoning of the judge preparing the opinion as of binding authority. Beyond the adjudication, they consider the subject at large as fully open to further judgment, and confine the reasoning and language to the purpose there in hand. Wells, Res. Adj. 527; *Cohens* v. *Virginia*, 6 Wheat. 264, 399; *Northern Bank* v. *Porter Tp.*, 110 U. S. 608, 615; S. C. 4 Sup. Ct. Rep. 254.

The doctrine of legislative construction is a delicate one. It is an argument frequently of great force, as here, and often a controlling principle in the construction of statutes, not because the legislature has any power even in terms to declare the interpretation of a previous statute, but because, if the courts have called attention to a defect or an omission, and it be supplied by the legislature, there is a fact in the history of the legislation from which the courts may reasonably infer the intent of the law-making power, which is, after all, the ultimate object of all construction. Potter's Dwar. St. 68, and notes; Sedg. St. & Const. Law, 252. But the legislature no more than the courts should be held to have adopted either *obiter dicta* of judge's opinions or their reasoning not within that designation, nor to have legislated with reference thereto, without at least more evidence than exists from the mere inferences drawn from the relation of the two events in the matter of time. I do not much doubt that the decision under consideration called attention to the want of power in the probate court to foreclose a wife's dower in the matter of the administration of assignments,—a power that was as much needed to complete the system adopted on the construction I have suggested, as it would be on the construction that is urged by the defendants here,—but it would be pressing the force of the fact beyond its legitimate effect to hold that it was the intention of the legislature, by conferring that power, to adopt the suggestion that with that power the jurisdiction of the probate court would become exclusive, even though the suggestion be a part of the judicial opinion calling attention to the omission. Altogether, and in a word, I am not at all satisfied that the legislature or the supreme court of Ohio intended, either by the amendatory legislation or these two decisions, to establish the probate court into a tribunal of such enormous jurisdiction as that insisted on by the defendants' counsel, and think it more reasonable to construe the insolvent laws as establishing a special tribunal of regulation for the administration of the assignee's trust, and

that its jurisdiction is altogether subordinate and merely auxiliary to that of the ordinary courts of law and equity appointed to adjudicate all controversies of that character arising under the insolvent, as well as the other laws of Ohio.

It is a familiar feature in the history of our late bankruptcy acts that in the beginning precisely the same enormous and exclusive jurisdiction was persistently claimed by the bankruptcy courts, was as persistently denied, and finally settled against the claim of jurisdiction; the supreme court having "steadily set its face against that view." *Eyster* v. *Gaff*, 91 U. S. 521, 525. The claim was far more reasonable under the bankrupt law than under these insolvent laws of Ohio, as will be seen by a critical comparison of the two acts, and I have only applied the reasoning of our courts on the one to the other. So, too, it is a general rule of law that in all these cases of special tribunals their jurisdiction is strictly confined and never excludes the courts of ordinary jurisdiction, except upon the clearest direction of the legislative will. *Comegys* v. *Vasse*, 1 Pet. 193, 212; *Garland* v. *Wynn*, 20 How. 6, 8; *Judson* v. *Corcoran*, 17 How. 612, 614; *Frevall* v. *Bache*, 14 Pet. 95, 97; *Lindsey* v. *Hawes*, 2 Black, 554, 558.

I have reached my conclusions with great diffidence, and, being a stranger to the laws of Ohio, have reserved my own opinion until it could be submitted to the better judgment of our Brother SAGE, who heard these questions on demurrer, and who, I feel relieved to say, concurs with me in these conclusions. Let the plaintiff take a decree, with leave to apply to the court for the particulars thereof if the parties cannot agree, inasmuch as the questions which may arise on that subject have not been sufficiently argued to enable us to determine how far these insolvency statutes shall govern the terms of the decree, if at all.