SUTTON, Circuit Judge.
When Wells Fargo foreclosed on Andrea Gilbert’s home in 2010, she refused to leave, claiming that the bank had agreed to modify the terms of her loan. All the bank had done at that point, however, was agree to provide her with an application that would allow her to request a loan modification. Because she later failed to qualify for the loan modification, the district court held that the bank had the right to seize her home. We affirm.
Andrea fell behind on her mortgage around the same time her marriage to Donald Gilbert fell apart. Any hope of staying in her home apparently hinged on Donald, whom the divorce court ordered to pay the mortgage in lieu of child support. Donald, sad to say, paid nothing, leaving Andrea (and their children) in the lurch. By early 2010, Andrea was ten monthly payments behind on the mortgage and lacked, the resources to pay what she (in • truth her former husband) owed.
She asked Wells Fargo if there was any way she could modify the terms of the loan. The bank told her about the federal-Home Affordable Modification Program, which “encourage[s] mortgage holders to renegotiate qualifying loans to reduce the homeowner’s mortgage payments to a sustainable level” and delays foreclosure while the bank reviews the homeowner for eligibility. Thompson v. Bank of Am., N.A., 773 F.3d 741, 747 (6th Cir. 2014). That sounded like manna from heaven. Andrea gave Wells Fargo her financial information, including her estimated monthly income, and the bank told her that she “pre-qualified” for a modification. R. 44-12 at 12. “To be reviewed [further] for the [program],” the bank explained, she needed to complete a three-month trial period plan, apply for a permanent loan modification, and “provide [some] requested documentation,” including her current income. Id. at 11-12. She made the three monthly trial payments and submitted her application, which listed her monthly income at $1545—$845 of which purportedly came *47 from “Child Support/Alimony.” R. 44-14 at 19. But she was never able to provide proof that she received the child-support payments because Donald never made them. The bank requested documentation of the payments at least five times, including proof of “a Divor[cej Decree” to show how long the payments would last and “proof of Child Support” to show she received the money each month. Id. at 26-27. Andrea responded that she “had neither [of the] documents” that the bank “told” her to send. Id.
Without the documents, the bank could not confirm that Andrea’s income sufficed to modify the loan. The bank denied her application on May 18, 2010. Later efforts to modify the loan failed as well, and the bank foreclosed on her property on Augpst 30, 2010. The bank assigned its interest to the Federal Home Loan Mortgage Corporation, better known as Freddie Mac.'
Andrea refused to leave the home, prompting Freddie Mac to file an unlawful detainer action in Tennessee state-court to evict her. Andrea counterclaimed against Freddie Mac (on several state law grounds) and filed a third-party claim against Wells Fargo, alleging it had agreed to modify her loan. Freddie Mac removed the ease to federal court and, together with Wells Fargo, moved for judgment as a matter of law. See 12 U.S.C. § 1452(f). The district court dismissed many of Andrea’s claims on the pleadings and granted the defendants summary judgment op the rest. With respect to Freddie Mac’s eviction claim, the court denied Andrea’s motion to dismiss for lack of subject matter jurisdiction, struck her answer as untimely, and set the case for trial. Before trial, the district court entered judgment for Freddie Mac on the remaining claim as a matter of law.
On appeal, Andrea challenges (1) the district court’s summary judgment decision rejecting her state law claims against Wells Fargo, (2) its denial of her motion to dismiss Freddie Mac’s eviction action, and (3) its decision to strike her answer to the eviction action.
State law claims against Wells Fargo. Andrea first claims that Wells Fargo breached a contract to modify her loan. But no such contract existed. Wells Fargo invited Andrea to apply to modify her loan and offered to review her application if she complied with certain requirements. She applied. But she failed to meet the application’s requirements, namely that she submit documentation of her current income. Her application thus remained just that. Now, as ever, an “application when made is not a contract.” Travelers Ins. Co. v. Wolfe, 78 F.2d 78, 81 (6th Cir. 1935); see Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011); Canton Cotton Mills v. Bowman Overall Co., 149 Tenn. 18, 257 S.W. 398, 402 (1924).
Look no further than the application itself to confirm the point. “The Trial Period Plan,” it says, “is the first step” to permanent modification. R. 44-13 at 4. It “is not a modification of the Loan Documents” itself. R. 1-1 at 292. Permanent modification, it adds, does not occur “unless and until” Andrea satisfied “all of the conditions required for modification.” Id. One such condition required Andrea to provide “documentation for all income” that she regularly received, including “any child support or alimony.” Id. at 291. She thus needed to provide a copy of her divorce decree “that states the amount of the alimony or child support” and “[p]roof of full, regular and timely payments.” R. 44-13 at 3. Yet, as Andrea admitted to the bank at the time, she sent “neither [of those] documents.” R. 44-14 at 26-27. That meant she did not “meet all of the conditions required for modification,” and that *48 meant her application never became a loan-modification contract, R. 1-1 at 292.
Unfortunate though this conclusion may be, it is supported by communications between Wells Fargo and Andrea at the time. The bank told Andrea that “[i]f [her] income documentation does not support the income amount that [she] previously provided ... [she] may not qualify for this loan modification program.” R. 44-13 at 2. And Andrea recalled being “told” to provide the documentation and repeatedly called and wrote Wells Fargo to discuss the relevant documents. E.g., R. 44-14 at 26-27. She said that she was still “waiting on [the] Divor[ce] Decree + Child Sup.,” id. at 25, and still “working on getting” the money and corresponding documents, id. at 26-27. But because her ex-husband, a one-time defendant in this saga and a less-than-admirable figure in it, never paid the child support, the money never came. Neither did any documentation of a payment. Neither did any binding contract to modify the mortgage.
Andrea tries to counter this conclusion on several grounds. She contends that she did supply sufficient documentation of her regular monthly income. But the document that she provided—the divorce court’s February 2010 order for her to receive past-due and future child support—showed only that she expected to receive future payments, not that she had actually- received “regular and timely” payments as Wells Fargo required. R. 44-13 at 3. Nor does Andrea’s prequalification for a loan modification mean. that she was in fact qualified for one. Cf. Martin Marietta Materials, Inc. v. Kan. Dep’t of Transp., 810 F.3d 1161 (10th Cir. 2016). Her “income documentation,” without the payments from Donald, could show a monthly income of only $700, which did “not support the income amount” of $1545 that she used to become prequalified. R. 44-13 at 2. Nor was anything amiss with Wells Fargo’s denial letter. It gave Andrea sufficient notice of the denial. And it was issued “as quickly as possible,” R. 44-13 at 5, with any delay attributable to the bank’s “extension of time” for Andrea to “gather [her] documents,” id. at 3. It’s hard to fault the bank for working with Andrea to try to qualify her for the loan modification rather than denying the application the first chance it had.
Andrea persists that she made the three trial payments when she used the lump-sum award she received from Donald’s past-due child support. But just because Andrea could make past payments based on a past lump-sum award does not prove that she could make present (to say nothing of future) payments on a “regular and timely” basis, as required. Id. In point of fact, the past-due child support dried up quickly—after the three payments—and when it did, Andrea (no fault of her own) had no way to make any ongoing payments. The bank in the final analysis did not breach any contract with Andrea.
Andrea separately claims that the district court should not have rejected her promissory estoppel claim. But just as Andrea did not produce evidence of a contract to modify her loan, she did not produce evidence of a promise to do so either. Such a promise, we have insisted, “must be actual, clear, and definite—a conditional promise will not do.” Olson v. Merrill Lynch Credit Corp., 576 Fed.Appx. 506, 511 (6th Cir. 2014) (quotation omitted). The Tennessee courts say the same thing. A promise “must be unambiguous and not ... vague.” Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991).
Andrea’s problem is that Wells Fargo did not make an “actual, clear, and definite” or “unambiguous” promise to modify her loan. To the contrary, it told her that it *49 didn’t “guarantiee] anything at all,” R. 48-6 at 33, and used words like “may,” “maybe,” “if,” “could,” and “possibly” to back that up, e.g., R. 44-8; R. 44-10; R. 44-12. “At most, [Wells Fargo] informed [Andrea] that she might qualify”—if she. complied with all of its prerequisites.Thompson, 773 F.3d at 753 (emphasis added). But she did not comply. In the absence of a promise, Andrea’s estoppel claim must fail. Amacher, 826 S.W.2d at 482; see Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982).
Andrea’s wrongful foreclosure claim also comes up short. She acknowledged in the district court and in her opening appellate brief that, if her breach of contract and promissory estoppel claims failed, then her wrongful foreclosure claim must fail as well. That’s because a Tennessee wrongful foreclosure claim does not amount to an independent cause of action in the Home Affordable Modification Program context. Clay v. First Horizon Home Loan Corp., 392 S.W.3d 72, 79 (Tenn. Ct. App. 2012); see Mik v. Fed. Home Loan Mortg. Corp., 743 F.3d 149, 166-67 (6th Cir. 2014).
Her contrary contention raised for the first time in her reply brief on appeal comes too late. Jones v. Reynolds, 438 F.3d 685, 695 (6th Cir. 2006). It would fail anyway. See Clay, 392 S.W.3d at 79.
No doubt, we have considerable sympathy for Andrea’s “frustrating inability to procure a payment modification.” Thompson, 773 F.3d at 753. The bank by all appearances was frustrated by that inability as well. But all of this does not give us a warrant to ignore the requirements of the application and Tennessee state law.
Freddie Mac’s eviction action. The district court also correctly denied Andrea’s motion to dismiss Freddie Mac’s eviction action. Andrea contends that the district court lacked subject matter jurisdiction over the case. That is not the case, however. The “Freddie Mac” Act, see Federal Home Loan Mortgage Corporation Act, Pub. L. No. 91-351, Tit. III, §§ 301-310, 84 Stat. 450, 451-58 (1970), grants district courts “original jurisdiction” over “all civil actions to which [Freddie Mac] is a party.” 12 U.S.C. § 1452(f). And it allows Freddie Mac to remove state-court cases to federal court that name it as a party. Id. That’s all Freddie Mac did here.
Andrea responds that the state court from which Freddie Mac removed the case lacked jurisdiction, which deprived the federal court of jurisdiction as well. Known as “derivative jurisdiction,” this theory holds that a “federal district court does not acquire subject matter jurisdiction by removal if the state court lacked jurisdiction over the original action.” W. & S. Life Ins. Co. v. Smith, 859 F.2d 407, 409 n.4 (6th Cir. 1988). The doctrine, for what it is worth, appears to be on its last legs. See 14B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (4th ed. 2016) (collecting materials). Congress- notably has abolished it for cases removed under the general removal statute. 28 U.S.C. § 1441(f). Yet the parties agree that it applies here because Freddie Mac relied on the Freddie Mac Act, not the general removal statute, to remove the case. See, e.g., Lopez v. Sentrillon Corp., 749 F.3d 347, 351 (5th Cir. 2014); Palmer v. City Nat’l Bank, of W. Va., 498 F.3d 236, 246 (4th Cir. 2007).
Assume then that the doctrine, even if just for argument’s sake, applies. And assume, again for argument’s sake, that the doctrine is “jurisdictional” in the sense that it goes to our power to hear the case. But see Morda v. Klein, 865 F.2d 782, 784 (6th Cir. 1989); Rodas v. Seidlin, 656 F.3d 610, 619-25 (7th Cir. 2011). Even so, the district court had jurisdiction because the *50 state court had jurisdiction. An overview of the Tennessee court system shows why. Tennessee general sessions courts, where Freddie Mae initiated this lawsuit, are akin to small claims courts. They have limited jurisdiction (over cases such as. eviction actions), and their judgments do not bind losing parties that appeal to general trial courts, known as circuit courts. See Ware v. Meharry Med. Coll., 898 S.W.2d 181, 183-84 (Tenn. 1995); see Tenn. Code Ann. §§ 27-5-108(a)(1), 29-18-128. The general trial courts acquire jurisdiction over the 'case so long as the losing party files its appeal within ten days of the adverse judgment and “give[s] bond with good security ... for the costs of the appeal.” Id. §§ 27-5-101, -103(a).
Freddie Mac met these state law requirements, giving the state court—and thus the federal court—jurisdiction over the case. After it lost at the general sessions court, it filed an appeal within ten days, and it used a surety bond for the appeal costs. The Tennessee circuit court made note of the bond on its docket and properly asserted jurisdiction over the case. Contrary to Andrea’s argument, Tennessee law requires nothing more. It contains no specific signature requirement, no type-of-surety requirement, no form-of-payment requirement. See Griffin v. Campbell Clinic, P.A., 439 S.W.3d 899, 905 (Tenn. 2014); Tenn. Code Ann. § 16-15-729. It says only that “[a]n appeal bond ... shall be considered sufficient if it secures the cost of the cause on appeal.” Id. § 27-5-103(b). That’s all. And that’s what Freddie Mac’s appeal bond did. The district court properly denied Andrea’s motion to dismiss.
Leave to file an answer. The court also acted within its discretion in denying Andrea leave to file her answer over a year and a half too late—on the night before the joint pretrial order was due and less than a month before trial. Andrea submitted this late filing without the required motion to extend her time to file, see Fed. R. Civ. P. 6(b)(1)(B), which in some quarters dooms the request by itself. Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998); see B & D Partners v. Pastis, No. 05-5954, 2006 WL 1307480, at *2 (6th Cir. May 9, 2006). Yet the district court (graciously) considered whether to allow the filing, using the late-filing “excusable neglect” standard that Andrea urged. See Fed. R. Civ. P. 6(b)(1). The court nonetheless determined that the alleged “oversight” by Andrea’s lawyer— forgetting to file—did not excuse the late filing. R. 77 at 16; see McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).
On appeal, Andrea argues that the district court applied the wrong standard— that it should have applied the more lenient Civil Rule 55(c) “good cause” standard applicable to excuse default judgments. At least one court, it is true, has applied this standard to excuse a late-filed answer when doing so avoided a default judgment. See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1339 (11th Cir. 2014). But in this case there was no default judgment to avoid. The district court denied Freddie Mac’s request for a default judgment at the same time it denied Andrea’s motion to file a very late answer. What’s more, the district court applied the standard Andrea urged it to apply. We generally do not allow litigants to move the goalposts on appeal, particularly when they set the goalposts in the first place and offer no good reason for making a change on appeal. See Greco v. Livingston County, 774 F.3d 1061, 1064 (6th Cir. 2014); United States v. LaBarge, 52 Fed.Appx. 216, 219 n.1 (6th Cir. 2002).
For these reasons, we affirm.