In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3035

RANDAL RICCI,

*Plaintiff-Appellant,*

*v.*

DARRIN SALZMAN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-6993 — **Matthew F. Kennelly**, *Judge.*

ARGUED SEPTEMBER 17, 2020 — DECIDED OCTOBER 1, 2020

Before KANNE and HAMILTON, *Circuit Judges.*[*]

KANNE, *Circuit Judge.* This case calls for us to determine whether the district court properly dismissed the plaintiff's amended complaint without prejudice under the doctrine of derivative jurisdiction even though that complaint invoked

---

[*] Circuit Judge Barrett was a member of the panel when this case was submitted but did not participate in the decision and judgment. The appeal is resolved by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

federal jurisdiction. We affirm the district court because the derivative jurisdiction doctrine barred it from exercising jurisdiction over the case and dismissal without prejudice was the appropriate result.

## I. BACKGROUND

Randal Ricci was awarded custody of his minor daughter in state-court divorce proceedings.[1] Ricci's daughter receives supplemental security income from the Social Security Administration ("SSA") and requires a "representative payee" to receive and manage her benefits. For nearly three years, Ricci served as representative payee. In August 2018, however, Defendants—SSA employees—removed Ricci as representative payee because they determined that he was not his daughter's legal guardian.

Ricci filed a *pro se* action in state court requesting that the court require Defendants to reinstate him as representative payee. Defendants, as federal employees, removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442. Then, Defendants moved to dismiss the action under the doctrine of derivative jurisdiction. They argued that the state court had no jurisdiction over the case when it was originally filed, and therefore, the federal court could not hear the case after it was removed. Ricci, this time with counsel, amended his complaint to invoke federal jurisdiction under 28 U.S.C. § 1361, which vests federal courts with jurisdiction over mandamus actions against federal employees. Defendants again moved to dismiss under the derivative jurisdiction

---

[1] These facts are drawn from Ricci's amended complaint and are taken as true for purposes of this appeal. *Gomez v. Randle*, 680 F.3d 859, 861 (7th Cir. 2012).

doctrine. Ricci responded that his amended complaint cured any procedural defect in removal caused by the doctrine.

The district court agreed with Defendants, granted their motion, and dismissed the amended complaint without prejudice under the derivative jurisdiction doctrine. The court also instructed Ricci to initiate a new federal action if he wished to pursue his claims. Ricci filed this appeal instead.

## II. ANALYSIS

The district court's dismissal of Ricci's amended complaint under the derivative jurisdiction doctrine presents a question of law that we review *de novo. See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 588 (7th Cir. 2001); *Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350 (5th Cir. 2014) (reviewing dismissal under the derivative jurisdiction doctrine *de novo*).

Ricci makes two arguments on appeal. First, he argues that the state court *did* have jurisdiction over his initial action, so the derivative jurisdiction doctrine poses no bar to his case continuing in federal court. Second, Ricci argues that even if the state court did *not* have jurisdiction over his initial action, this court has twice signaled that a plaintiff may cure a defect in removal created by the derivative jurisdiction doctrine simply by filing an amended complaint that invokes federal jurisdiction. *See Hammer v. U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 535 (7th Cir. 2018); *Rodas v. Seidlin*, 656 F.3d 610, 629 (7th Cir. 2011). And because Ricci's amended complaint invoked federal mandamus jurisdiction, he argues that it should not have been dismissed.

Ricci's first argument can be dealt with fairly quickly because he never made it in the district court. In response to Defendants' motion to dismiss, Ricci argued only that our *Rodas*

and *Hammer* decisions allowed him to avoid the derivative ju-
risdiction bar because his amended complaint invoked fed-
eral mandamus jurisdiction. He did not argue that the state
court had jurisdiction in the first place. In fact, Ricci explained
to this court in his reply brief that he "did not argue about the
state[] court's jurisdiction because it was not material to his
theory of the case." That, he argues, was "neither accident nor
neglect and is not a forfeiture." But it *is* waiver; Ricci made "a
deliberate decision not to present a ground for relief that
might be available in the law." *United States v. Cook*, 406 F.3d
485, 487 (7th Cir. 2005). Because Ricci did not make his state-
court-jurisdiction argument in the district court "and instead
raised it for the first time in [his] appellate brief, [he has]
waived it for purposes of this appeal." *Henry v. Hulett*, 969
F.3d 769, 786 (7th Cir. 2020) (en banc).[2]

Ricci also contends that an appellant may raise on appeal
any issue decided by the district court. But this argument

---

[2] Defendants, too, confuse waiver with forfeiture. Whereas waiver "is
a deliberate decision not to present a ground for relief that might be avail-
able in the law," *Cook*, 406 F.3d at 487, "[f]orfeiture occurs when a party
fails to make an argument because of accident or neglect," *Sansone v. Bren-
nan*, 917 F.3d 975, 983 (7th Cir. 2019). We have tried to be careful in recent
years to distinguish the two. *See Henry*, 969 F.3d at 786 ("Waiver and for-
feiture are distinct legal concepts."); *Reed v. Columbia St. Mary's Hosp.*, 915
F.3d 473, 478 (7th Cir. 2019) ("Some of our opinions use the terms waiver
and forfeiture interchangeably, but … we need to pay attention to the dif-
ference."). The difference often matters because we can sometimes review
forfeited issues for plain error, but we can't review waived issues at all.
*Henry*, 969 F.3d at 786. It isn't so important here, though, because we
wouldn't review the issue either way. *Id.* (explaining the "rare situa-
tion[s]" in which we review forfeited arguments in civil cases).

similarly falls victim to Ricci's own briefing, which stresses that the district court entered dismissal "without discussing whether the state court had jurisdiction over any portion of the controversy" and "[w]ithout resolving this question." We decline to address an issue that Ricci concedes was not fully argued, discussed, or resolved in the district court. We therefore assume without deciding that the state court did not have subject-matter jurisdiction over Ricci's claims for injunctive relief against these federal officials. *Cf.* 42 U.S.C. § 405(g) (judicial review under the Social Security Act is available only in U.S. district courts).

Moving on to Ricci's second argument on appeal: that the district court should not have dismissed his amended complaint without prejudice under the derivative jurisdiction doctrine. Traditionally stated, this doctrine provides that "if the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there." *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) (citing, among other cases, *Minnesota v. United States*, 305 U.S. 382, 389 (1939)). We have since clarified that this doctrine "is best understood as a procedural bar to the exercise of federal judicial power. That is, the doctrine creates a procedural defect in removal, but is not an essential ingredient to federal subject matter jurisdiction." *Rodas*, 656 F.3d at 619. As such, it can be forfeited if not timely raised before the trial court. *Id.* at 623, 629. Moreover, "[t]he doctrine provides a background rule against which all of the removal statutes operate; it applies unless abrogated." *Id.* at 618.

Congress has abrogated the doctrine with respect to the general removal statute, 28 U.S.C. § 1441(f) ("The court to

which a civil action is removed *under this section* is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." (emphasis added)). But it has *not* abrogated the doctrine with respect to the federal officer removal statute at issue here, 28 U.S.C. § 1442. *Rodas*, 656 F.3d at 616 ("[T]he doctrine of derivative jurisdiction has been abrogated in the general removal statute … but not the federal officer removal statute."); *see also Lopez*, 749 F.3d at 350 ("[A]ny ambiguity about the endurance of the derivative action doctrine as applied to removals under § 1442 was eliminated when Congress amended § 1441 in 2002 to add the words 'removed under this section.'"). On that much, the parties seem to agree.

Ricci argues that we have nevertheless approved a procedure that permits a plaintiff to bypass the derivative jurisdiction bar by filing an amended complaint that properly invokes federal jurisdiction. He points to language from *Rodas* and *Hammer*. We think Ricci puts too much stock in these cases.

It's true that in *Rodas* we stated "that any defect in removal created by the doctrine of derivative jurisdiction would be cured if [the plaintiff] simply filed an amended complaint." 656 F.3d at 629. But as the district court recognized, *Rodas* only held that because the doctrine is not strictly jurisdictional, it can be waived or forfeited and must be asserted before a ruling on the merits. *Id.* at 623. The *Rodas* defendants did not raise their derivative jurisdiction argument until after judgment was entered, so it was forfeited and the court was not barred from exercising its jurisdiction. *Id.* at 614, 623–24. Accordingly, courts in this circuit have widely recognized that

the "*Rodas* exception" applies "only in the context of a case where the dispute has proceeded to a disposition on the merits." *Pelto v. Office of Reg'l Chief Counsel*, No. 11-CV-815-WMC, 2013 WL 5295678, at *3 (W.D. Wis. Sept. 19, 2013); *accord Brown v. Hosp. "A"*, No. 2:17-CV-125, 2017 WL 5989717, at *2 (N.D. Ind. Dec. 4, 2017); *Abu-Humos v. First Merit Bank*, No. 15-CV-6961, 2015 WL 7710374, at *1 n.1 (N.D. Ill. Nov. 30, 2015). Here, Defendants asserted the doctrine in their very first responsive pleading in federal court, and no substantive issues have been decided. So *Rodas* is inapposite.

Ricci then points to similar language in *Hammer*. There, after the case was removed from state court, the Department of Health and Human Services ("HHS") timely moved for dismissal under the derivative jurisdiction doctrine, and the plaintiff moved to remand the case back to state court. *Hammer*, 905 F.3d at 524. The district court remanded the case for lack of removal jurisdiction under § 1442, but we concluded on appeal that the district court did have removal jurisdiction and "should not have remanded this case to state court." *Id.* at 535.

We then turned to "the appropriate remedy." *Id.* HHS wanted outright dismissal, but we declined "because the merits of HHS's defense ha[d] not been resolved" and "[t]he district court, in the first instance, must evaluate … the propriety of dismissal under the doctrine of derivative jurisdiction." *Id.* We then stated—and this is what Ricci clings to—that the plaintiff "could, if she so chooses, amend her motion for declaratory relief to constitute a proper complaint that engages with the federal court's jurisdiction. Such a modification would cut out the intermediate step between dismissal of this case and the filing of a new one … ." *Id.*

We do not believe that in *Hammer* we "attempt[ed] to abrogate" the derivative jurisdiction doctrine "in a few sentences of dicta." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) (quoting *New York v. Army Corps of Eng'rs*, 896 F. Supp. 2d 180, 196 (E.D.N.Y. 2012)). And dicta it was, so we are free to depart from it. *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("Dicta are the parts of an opinion that are not binding on a subsequent court … ."). More fundamentally, "it rests with *Congress* to determine not only whether the United States may be sued, but in what courts the suit may be brought." *Minnesota*, 305 U.S. at 388 (emphasis added). Congress has not abrogated the doctrine with respect to removals under § 1442, and neither have we.

Nor did we hamstring the doctrine by fashioning a new rule permitting plaintiffs to sidestep it with an amended complaint. *Hammer* relied only on *Rodas* for its suggestion that the plaintiff could avoid the derivative jurisdiction bar by amending her complaint. *Hammer*, 905 F.3d at 535 (citing *Rodas*, 656 F.3d at 625). But again, the *Rodas* defendants forfeited the derivative jurisdiction argument. And in *Rodas*, we made clear that even though the doctrine is only a "procedural bar"—and even though "the justification for the rule is hardly obvious"—it is nevertheless "binding on us." *Rodas*, 656 F.3d at 615. It therefore "remain[s] mandatory. We must apply [it] if properly invoked." *Walker v. Weatherspoon*, 900 F.3d 354, 356 (7th Cir. 2018); *see also Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding that non-jurisdictional claim-processing rules "assure relief to a party properly raising them"); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 669 n.2 (7th Cir. 2017) (explaining that a non-jurisdictional rule is nevertheless "mandatory" where the defendant "invokes its benefit").

When the derivative jurisdiction doctrine is timely raised, then, it properly results in dismissal without prejudice. This should come as no surprise, for that is the remedy that district courts have routinely applied. *E.g.*, *Ajabu v. Harvey*, No. 18 C 1243, 2018 WL 3586588, at *5–6 (S.D. Ind. July 28, 2018) ("[U]nder the doctrine of derivative jurisdiction, dismissal without prejudice is the proper result."); *Brown*, 2017 WL 5989717, at *2; *Abu-Humos*, 2015 WL 7710374, at *1 n.1; *Pelto*, 2013 WL 5295678, at *3. And it is the remedy that other circuits have widely affirmed. *E.g.*, *Lopez*, 749 F.3d at 351; *Palmer v. City Nat. Bank, of W. Va.*, 498 F.3d 236, 249 (4th Cir. 2007); *see also Rodriguez v. United States*, 788 F. App'x 535, 536 (9th Cir. 2019); *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 216 (1st Cir. 1987).

In sum, we hold that when a defendant timely raises the derivative jurisdiction doctrine, it erects a mandatory bar to the court's exercise of federal jurisdiction, and a plaintiff cannot circumvent that bar merely by filing an amended complaint invoking federal jurisdiction.

We are cognizant, however, of the practical issues that could arise if a defendant raises the doctrine in a case that's far along—say, at summary judgment or on the eve of trial. What if, by that point, the statutory limitations period has expired and the plaintiff cannot initiate a new action?

Federal law suggests an answer to this problem. Under 28 U.S.C. § 1447(c), "[a] motion to remand [a] case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of [a] notice of removal under section 1446(a)." That the derivative jurisdiction doctrine is not jurisdictional but "creates a procedural defect in removal" therefore "suggests that derivative jurisdiction

should ordinarily be raised within 30 days." *Rodas*, 656 F.3d at 629. True, 28 U.S.C. § 1447(c) "by its terms … applies only to plaintiffs who seek to remand a case." *Id.* Nonetheless, "procedural defects in removal … generally must be raised within 30 days," *id.* at 621, so we think it appropriate to adopt a similar rule requiring defendants to assert the derivative jurisdiction doctrine within 30 days from removal. If raised within 30 days, it results in dismissal without prejudice. But after that window passes, it is forfeited and the plaintiff may proceed.

There is sufficient basis for such a rule. Again, "despite its perhaps improvident name," the derivative jurisdiction doctrine "is best understood as a procedural bar to the exercise of federal judicial power." *Id.* at 619. It thus causes a defect in removal "other than lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). And because "derivative jurisdiction counts as a procedural defect, not a subject-matter-jurisdiction defect," "it 'must [be] made within 30 days' of … removal." *Fed. Home Loan Mortg. Corp. v. Gilbert*, 656 F. App'x 45, 53 (6th Cir. 2016) (Sutton, J., concurring) (quoting 28 U.S.C. § 1447(c)) (citing *Rodas*, 656 F.3d at 621); *see also McMahon v. Bunn–O–Matic Corp.*, 150 F.3d 651, 653 (7th Cir. 1998) ("[A]ny defect in the removal process other than the lack of subject-matter jurisdiction must be raised within 30 days or is forfeited."), *abrogated on other grounds by Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1013 (7th Cir. 2020). "In that vein, it seems noteworthy that in every case we located in which the Supreme Court discussed the matter of derivative jurisdiction, the matter appears to have been raised promptly upon removal, prior to adjudication on the merits." *Rodas*, 656 F.3d at 624 (citing cases).

And a 30-day rule makes good sense. It puts the onus on defendants to raise the doctrine in a timely fashion and affords them its full benefit when they do. It also spares plaintiffs the misfortune of litigating a case until the eve of judgment, just to be booted from court without the ability to initiate a new action because the limitations period quietly expired in the meantime.

Finally, nothing in our precedent requires that we permit future defendants to assert the derivative jurisdiction doctrine at any point before judgment. We held in *Rodas* that raising the doctrine after judgment is entered is clearly too late, but that is not to say that it would be timely if raised at any point before then. We have never held that a defendant can string a plaintiff along until a jury is empaneled only to trigger the derivative jurisdiction bar at the last minute. There would be no reason for such a rule; after all, the doctrine causes a defect in removal, so the applicability of the doctrine is apparent from that moment, and 30 days is ample time to raise it.

Of course, none of that rescues Ricci's case. Defendants raised the derivative jurisdiction doctrine one week after removal and again three weeks after Ricci filed his amended complaint. That's exactly how it should be done.

### III. CONCLUSION

We therefore AFFIRM the district court's dismissal of Ricci's amended complaint without prejudice. We, like the district court, remind Ricci that if he wishes to pursue his claims, the doors to the federal courthouse are open to him if he files a new complaint.