**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 21-1047

RONALD E. GILLETTE,

Appellant

v.

WARDEN GOLDEN GROVE ADULT CORRECTIONAL
FACILITY

On Appeal from the District Court of the Virgin Islands
(Division of St. Croix)
District Court No. 1-17-cv-00042
District Judge:  Honorable Wilma A. Lewis

Argued on May 11, 2022

Before:  JORDAN, MATEY and ROTH, *Circuit Judges*

(Opinion filed: July 16, 2024)

Joseph A. DiRuzzo, III        **(Argued)**
Daniel M. Lader
DiRuzzo & Company
401 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, FL 33301

        Counsel for Appellant


Bradley Hinshelwood        **(Argued)**
United States Department of Justice
Room 7256
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Adam Sleeper
Office of the United States Attorney
5500 Veterans Drive
Suite 260
United States Courthouse
St. Thomas, VI 00802

Angela P. Tyson-Floyd
ffice of the United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820

        Counsel for Appellee

## OPINION OF THE COURT

**ROTH,** *Circuit Judge.*

To aid his pending petition for habeas corpus in the Virgin Islands Superior Court, Ronald Gillette subpoenaed the United States Attorney's Office (USAO) for the District of the Virgin Islands for documents related to his convictions under the laws of the Virgin Islands. The federal government is not a party to the habeas action, and Gillette's petition does not challenge any convictions under federal law. When Gillette did not receive the subpoenaed documents, he moved for contempt. The USAO removed the proceedings to the District Court for the District of the Virgin Islands pursuant to 28 U.S.C. §1442(a)(1) and moved to quash the subpoena. Gillette requested appointment of counsel. The District Court granted the motion to quash and denied Gillette's request for counsel. Gillette appealed.

The government argues that we lack jurisdiction of Gillette's appeal because the United States never waived its sovereign immunity. According to the government, because there was no waiver, the Superior Court lacked jurisdiction of Gillette's subpoena-enforcement action; thus, since the District Court "derived" its jurisdiction from the Superior Court under §1442(a)(1), the District Court lacked jurisdiction, as do we.

We do not agree with this interpretation of §1442(a)(1). We hold to the contrary that we do have jurisdiction of this

appeal. For the reasons stated below, we will affirm on the merits the District Court's order quashing the subpoena.

## I.

Gillette is a serial sex offender. In the 1980s in New Mexico, he received a twenty-seven-year sentence for sex crimes. After serving his sentence, Gillette moved to the United States Virgin Islands, but he did not register as a sex offender. On a tip, law enforcement found that he had been living with a fifteen-year-old child and had engaged in sexual contact with that child and another child. A grand jury indicted Gillette under both federal and Virgin Islands law. At a bench trial in the District Court, prosecuted by the USAO, Gillette was convicted on twenty counts of territorial-law offenses. The federal charges were dismissed. The court sentenced Gillette to 155 years' imprisonment. We affirmed Gillette's conviction on direct appeal.[1]

After exhausting his direct-appeal rights, Gillette filed a habeas petition in the Virgin Islands Superior Court. He sought to subpoena the USAO for its case file from his prosecution, and the Superior Court issued a subpoena duces tecum to the USAO. As required by the Department of Justice (DOJ)'s regulations concerning responses to subpoenas, often referred to as *Touhy* regulations,[2] the USAO requested that Gillette submit "a summary of the information" sought "and its relevance to the [habeas] proceeding."[3] He did not do so but

---

[1] *United States v. Gillette*, 738 F.3d 63, 81 (3d Cir. 2013).
[2] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).
[3] JA 42; *see* 28 C.F.R. § 16.22(d).

instead moved for contempt against the USAO for failing to respond to his subpoena.

The USAO then removed the proceedings to the District Court for the District of the Virgin Islands under § 1442(a)(1).[4] There, the USAO moved to quash the subpoena, and Gillette requested appointment of counsel. The Magistrate Judge granted the motion to quash and denied Gillette's request for counsel. The District Court affirmed the Magistrate Judge's order on the ground that Gillette did not comply with the DOJ's *Touhy* regulations. Gillette appealed.

**II.**

The government contends that it never waived its sovereign immunity and that as a result we lack jurisdiction to decide this appeal. The government's immunity argument depends on the doctrine of "derivative jurisdiction," which provides that, when a case is removed to federal court, the federal court "derives" its jurisdiction from the court from which the case was removed.[5] Gillette responds that the government forfeited this argument by raising it for the first time on appeal. The issue that we must decide then is whether the doctrine of derivative jurisdiction is a limitation on the court's subject-matter jurisdiction, which can be raised at any

---

[4] Section 1442(a)(1) provides generally that a civil action brought in state court against the United States may be removed to the "district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a)(1).
[5] *See Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 167–68 (3d Cir. 1976).

5

time, or whether it is a claims-processing rule that is subject to forfeiture.[6]

**A.**

Gillette asserts that the government forfeited its sovereign immunity defense by not raising it in the District Court after removing his subpoena-enforcement action pursuant to § 1442(a)(1).[7] According to Gillette, the Superior Court's lack of jurisdiction was merely a defect in the removal process. The government disagrees, arguing that derivative jurisdiction is an essential ingredient in the court's subject-matter jurisdiction and that as a result it can be raised at any time. In the past, we have discussed the doctrine of derivative jurisdiction as a limit on the courts' subject-matter jurisdiction.[8] However, intervening Supreme Court decisions require us to revisit that approach.

---

[6] We previously addressed this issue in non-precedential opinions. *See Calhoun v. Murray*, 507 F. App'x 251, 256 (3d Cir. 2012) ("[T]he doctrine of derivative jurisdiction, despite its perhaps improvident name, is best understood as a procedural bar to the exercise of federal judicial power. That is, the doctrine creates a defect in removal, but is not an essential ingredient to federal subject matter jurisdiction." (quoting *Rodas v. Seidlin*, 656 F.3d 610, 619 (7th Cir. 2011))); *Conklin v. Kane*, 634 F. App'x 69, 73 n.4 (3d Cir. 2015).

[7] Gillette also argues that no issue of sovereign immunity exists because the Superior Court is a "creature[] of the federal government." We need not address that argument given our holding on the question of derivative jurisdiction.

[8] *See, e.g.*, *Gleason v. United States*, 458 F.2d 171, 173–74 (3d Cir. 1972) ("If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none."

Recognizing that the federal courts have often referred to non-jurisdictional claims-processing rules as jurisdictional, the Supreme Court recently "endeavored to bring some discipline to use of the jurisdictional label."[9]  The Supreme Court therefore instructs us to "treat a procedural requirement as jurisdictional only if Congress *clearly states* that it is."[10] While Congress does not need to "incant magic words" to establish a jurisdictional rule, the "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences."[11]

---

(quoting *Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 379 (1922))).  However, more recently, we have rejected the notion that removal statutes carry jurisdictional consequences.  *Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp.*, 66 F.3d 46, 49 (3d Cir. 1995) ("[T]he Supreme Court consistently refused to treat the removal statutes as imposing independent jurisdictional requirements.").

[9] *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) (internal quotation marks omitted); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (discussing the Supreme Court's effort to "ward off profligate use of the term 'jurisdiction'"); *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435–36 (2011).

[10] *Boechler*, 596 U.S. at 203 (emphasis added) (internal quotation marks omitted) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)).

[11] *Id.* at 203 (first quoting *Auburn Reg'l Med. Ctr.*, 568 U.S. at 153; then quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)).

To decide whether derivative jurisdiction is a truly jurisdictional rule, we first look to the plain language of the statute. Section 1442(a)(1) provides the following:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminal or the collection of revenue.[12]

The text of this section—or, for that matter, any other subpart of § 1442—does not plainly show that Congress intended the statute to carry jurisdictional consequences. The section does not speak in jurisdictional terms, nor does it place any conditions on a federal court's power to hear cases that have

---

[12] 28 U.S.C. § 1442(a)(1).

been properly removed under the statute.[13]  It simply allows the government to remove an action from state to federal court when the United States or an officer or agency of the United States is a party to that action.  This is not the sort of clear statement of congressional intent that the Supreme Court requires.  Instead, derivative jurisdiction appears to be a doctrine of the courts' own making.[14]  "True jurisdictional limitations are set by the Constitution and by Congress, not by rules of procedure or judge-made doctrine."[15]

Our conclusion is consistent with the fundamental principles of removal.  Despite its name, removal jurisdiction is not a type of jurisdiction "analogous to federal-question jurisdiction and diversity-of-citizenship jurisdiction. Rather, it is a *means* of bringing cases within federal courts' original jurisdiction into those courts."[16]  As a result, treating derivative

---

[13] *Cf. Guerra v. Consol. Rail Co.*, 936 F.3d 124, 133 (3d Cir. 2019).

[14] *Fed. Home Loan Mortg. Corp. v. Gilbert*, 656 F. App'x 45, 53 (6th Cir. 2016) (Sutton, J., concurring) (noting that the doctrine "has no constitutional or statutory basis"); *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1298 (11th Cir. 2001) (describing derivative jurisdiction as a "judicially-created theory").

[15] *Metro Life Ins. Co. v. Price*, 501 F.3d 271, 278 (3d Cir. 2007) (citing *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004)) (cleaned up).

[16] Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.) (emphasis added).  The government cites Wright & Miller's authoritative treatise in support of its argument that the doctrine is jurisdictional.  However, recent editions of the treatise explain that "[t]he better view … is that derivative

jurisdiction as a limitation on the courts' subject-matter jurisdiction may produce "intractable oddities."[17] For example, if a federal court dismissed a case based on lack of derivative jurisdiction, it may have refused to hear a case that it had original jurisdiction over but that the state court did not. The plaintiff could then of course refile in federal court, but "the upshot would be the kind of rigmarole unworthy of a civilized judicial system and indefensible from the standpoint of practical judicial administration."[18] That is particularly true in cases where, as here, the parties litigated the action to a decision on the merits before the federal court's jurisdiction was challenged.

Nor are we persuaded that the purpose of derivative jurisdiction justifies treating it as a jurisdictional requirement. The doctrine allows the United States to raise its sovereign immunity defense in federal court, rather than depending on state or territorial courts to protect the federal government's interests. But treating derivative jurisdiction as a claims-processing rule does not deprive the government of the chance to raise the defense in federal court. It merely requires the government to do so promptly, which it often has done.[19] More

---

jurisdiction, despite its name, is a procedural defect rather than a subject matter jurisdiction ingredient." Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3655 (Rev. 4th ed.) (internal quotation marks omitted).

[17] *Fed. Home Loan Mortg. Corp.*, 656 F. App'x at 51 (6th Cir. 2016).

[18] *Id.* at 52 (cleaned up).

[19] *See Rodas v. Seidlin*, 656 F.3d 610, 624 (7th Cir. 2011) (collecting cases and noting that "in every case we located in which the Supreme Court discussed the matter of derivative

importantly, no matter how compelling, policy considerations do not answer the operative question: whether Congress clearly stated that § 1442(a)(1) carries jurisdictional consequences. A rule "does not become jurisdictional whenever it promotes important congressional objectives."[20]

For the above reasons, we hold that derivative jurisdiction is a claims-processing rule and does not deprive us of jurisdiction of this appeal.

**B.**

Nevertheless, without textual evidence of congressional intent, the government relies on several alternative arguments. First, it points to countervailing guidance from the Supreme Court that a procedural rule may be treated as jurisdictional when "a long line of Supreme Court decisions left undisturbed by Congress attached a jurisdictional label to the prescription."[21] However, closer analysis of the line of decisions cited by the government reveals that the jurisdictional status of derivative jurisdiction has never been clear-cut.[22] Most importantly, these decisions show that the

---

jurisdiction, the matter appears to have been raised promptly upon removal, prior to adjudication on the merits.").

[20] *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019) (internal quotation marks omitted) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 n.9 (2010)).

[21] *Id*. at 1849 (cleaned up).

[22] *See, e.g.*, *Lambert Run Coal Co.*, 258 U.S. 377, 382 (1922) (holding that the district court's jurisdiction upon removal is derivative in only "a limited sense.").

11

doctrine has long been subject to exception.[23]   True jurisdictional rules are unyielding, so we cannot conclude that the Supreme Court has always treated derivative jurisdiction as such.[24]

We find further support for our conclusion in our sister courts of appeals' treatment of derivative jurisdiction.  Courts in the majority of circuits have decided that the doctrine is a claims-processing rule,[25] while certain courts have construed it as jurisdictional at times and a claims-processing rule at

---

[23] The most extensive analysis of the doctrine can be found in *Rodas v. Seidlin*, 656 F.3d 610, 622–25 (7th Cir. 2011). Among other things, the *Rodas* court notes that the Supreme Court's early formulation of the doctrine in *Lambert Run* is "an almost verbatim quotation" of the decision in *Fidelity Trust Co. v. Gill Car Co.*, 25 F. 737 (C.C. Ohio 1885).  *Rodas*, 656 F.3d at 623.  In that case, the Circuit Court heavily qualified its application of the doctrine.  *Fid. Trust Co.*, 25 F. at 739 ("I do not mean to say that we measure our jurisdiction wholly by that of the state court, and that nothing can be adjudged here which could not have been adjudged there").

[24] *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

[25] *See, e.g.*, *High Lonesome Ranch, LLC v. Bd. of Cnty. Comm'rs*, 61 F.4th 1225, 1240–41 (10th Cir. 2023); *Rodas*, 656 F.3d at 619; *State of N.D. v. Fredericks*, 940 F.2d 333, 336–37 (8th Cir. 1991); *Morda v. Klein*, 865 F.2d 782, 784 (6th Cir. 1989); *Foval v. First Nat'l Bank of Com. in New Orleans*, 841 F.2d 126, 129 (5th Cir. 1988); *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 800–01 (9th Cir. 1987).

others.[26]   A long and undisturbed line of Supreme Court decisions treating the doctrine as a jurisdictional rule would not give rise to such conflicting decisions between (and within) our sister courts of appeals.[27]

We also disagree that Congress acquiesced to a jurisdictional view of the doctrine.  Congress abrogated derivative jurisdiction under the general removal statute in 1985, but it later clarified that the abrogation applied only to 28 U.S.C. § 1441.[28]   According to the government, that selective abrogation implicitly ratified the doctrine as a limitation on subject-matter jurisdiction when removal is premised on any other statute.  However, the fact that Congress

---

[26] *Compare Louisiana v. Sparks*, 978 F.2d 226, 236 (5th Cir. 1992) (treating the doctrine as a jurisdictional rule) *and In re Elko Cty. Grand Jury*, 109 F.3d 554, 555 (9th Cir. 1997) (same), *with Foval*, 841 F.2d at 129 (treating the doctrine as non-jurisdictional) *and Sorosky*, 826 F.2d at 801 (same).

[27] *See Bowles v. Russell*, 551 U.S. 205 (2007).  In *Bowles*, the Supreme Court relied on a long line of its decisions to hold that the time limit to take an appeal is a jurisdictional rule.  *Id.* at 214.  In doing so, the Court referred to the "consistency of [its] holdings" as reflected in the fact that the "courts of appeals routinely and uniformly dismiss untimely appeals for lack of jurisdiction."  *Id.* at 210.  The same cannot be said of derivative jurisdiction.

[28] 28 U.S.C. § 1441(f) ("The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."); *see also Lopez v. Sentrillon Corp.*, 749 F.3d 347, 350–51 (5th Cir. 2014).

did not abrogate the doctrine in all cases does not transform it into a limitation on subject-matter jurisdiction when it does apply.[29] Derivative jurisdiction can just as easily remain applicable as a claims-processing rule, an interpretation of the doctrine that several federal courts of appeals have endorsed.[30]

## C.

Because derivative jurisdiction is not an essential ingredient for the District Court's subject-matter jurisdiction, the Superior Court's lack of jurisdiction is best understood as a defect in removal.[31] Where, as here, a case is removed to federal court and litigated to a judgment on the merits, "the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it

---

[29] The cases that the government cites for this argument fail to convince us otherwise. *See* Appellee's Reply to Supp. Br. 2 (citing *Lopez*, 749 F.3d at 351 (in which the jurisdictional status of the doctrine was not at issue because derivative jurisdiction was raised promptly upon removal); *Conklin*, 634 F. App'x at 73 (explaining that derivative jurisdiction still applies to removals under § 1442 but that it is better understood as a non-jurisdictional claims-processing rule)).

[30] *See High Lonesome Ranch*, 61 F.4th at 1240–41 (10th Cir. 2023) (construing the doctrine as a claims-processing rule and observing that courts of appeals for six other circuits have similarly construed the doctrine).

[31] *Rodas*, 656 F.3d at 619 ("[T]he doctrine creates a defect in removal, but is not an essential ingredient to federal subject matter jurisdiction.").

14

been filed in that court."[32]  There is no dispute that the District Court would have had original jurisdiction of Gillette's subpoena-enforcement action:  the United States waives its sovereign immunity in non-monetary actions in federal court.[33]  Therefore, we proceed to the merits.

## III.

We review the District Court's order on the motion to quash for abuse of discretion and review its legal conclusions de novo.[34]  Gillette argues that the District Court erred on several grounds when it quashed his subpoena for failure to comply with the DOJ's *Touhy* regulations.  First, he argues that he did not need to comply with the regulations because the USAO was a party to his "original proceedings."  Second, he raises broad challenges to the regulations under the

---

[32] *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972).  Because *Grubbs* supplies the applicable standard on appeal, we need not address the government's argument that it preserved the derivative jurisdiction issue by raising it in the District Court.  Even so, it did not.  The government's motion to quash mentioned sovereign immunity in passing, but it did not present any substantive argument regarding the Superior Court or District Court's jurisdiction and instead focused on Gillette's failure to comply with the *Touhy* regulations.  "We do not regard such cursory treatment as sufficient to bring the issue . . . before our Court on appeal."  *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017).

[33] 5 U.S.C. § 702.

[34] *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005).

15

Constitution and the Administrative Procedure Act (APA). Finally, he argues that the District Court erred by denying his request for counsel. We reject each argument.

**A.**

Title 5, Section 301 of the U.S. Code authorizes the Attorney General to issue regulations concerning the "conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property."[35] Pursuant to that authority, the DOJ has issued rules, often called *Touhy* regulations, that prohibit its employees from disclosing information contained in, relating to, or based on material contained in DOJ files as part of any proceeding to which the United States is not a party, without prior approval.[36]

Under these regulations, a party who seeks such information from a DOJ employee must first submit a statement summarizing "the information sought and its relevance to the proceeding."[37] Once a party submits that statement, the DOJ must decide whether and to what extent to produce the requested information.[38] If a party disagrees with the scope of production in response to the request, the party may challenge the production in district court under the APA.[39] In *United States ex rel. Touhy v. Ragen*, the Supreme Court

---

[35] 5 U.S.C. § 301.
[36] 28 C.F.R. § 16.22(a).
[37] 28 C.F.R. § 16.22(d).
[38] *See* 28 C.F.R. § 16.24.
[39] *See, e.g.*, *Davis Enters. v. E.P.A.*, 877 F.2d 1181, 1186 (3d Cir. 1989).

upheld the validity of this kind of regulation and refused to hold a federal employee in contempt for declining to produce documents in accordance with the regulations.[40] We have similarly recognized that "a federal employee may not be compelled to obey a subpoena contrary to the agency's instructions under valid regulations."[41]

Gillette subpoenaed the USAO for its case file from his prosecution in the Virgin Islands. Pursuant to the DOJ's *Touhy* regulations, the USAO requested a summary of the information he sought and its relevance to his habeas proceeding. Rather than comply with that request, Gillette moved for contempt. The District Court quashed Gillette's subpoena based on his failure to comply with the *Touhy* regulations. Because the regulations barred the USAO from obeying the subpoena absent Gillette's compliance, and the regulations are valid, the District Court did not err.[42]

**i.**

Gillette first argues that the *Touhy* regulations do not apply because the USAO was "a party to the original legal proceedings in [his] habeas case."[43] However, as the District Court correctly noted, the "original proceeding" for purposes of the *Touhy* regulations is the proceeding in which the subpoena was issued. Here, that is Gillette's habeas action currently pending in the Virgin Islands Superior Court. The USAO is not a party to that proceeding.

---

[40] 340 U.S. at 468–69 (1950).
[41] *Davis Enters.*, 877 F.2d at 1186.
[42] *See id.*
[43] Br. 11.

17

Gillette attempts to avoid this result by arguing that his habeas action is inherently derivative of his underlying criminal prosecution. Because the USAO was a party to that proceeding, he argues that we should also consider it a party to his habeas proceeding for purposes of the *Touhy* regulations. However, Gillette does not cite any authority that supports his interpretation of the regulations. In fact, the two decisions that Gillette cites only confirm that we look to the proceeding in which the subpoena was issued, rather than to any ancillary proceeding.[44]

**ii.**

Next, Gillette claims that the *Touhy* regulations violate the separation of powers and are therefore unconstitutional as applied. According to Gillette, if we were to enforce the DOJ's *Touhy* regulations, we would permit a party (i.e., the DOJ) rather than the court to determine what evidence must be produced in his habeas proceedings. Gillette's argument fails because it depends on the premise that the USAO is a party to his habeas proceeding. But the USAO is not a party to that proceeding.

---

[44] *See Alexander v. F.B.I.*, 186 F.R.D. 66, 71 (D.D.C. 1998) (holding that the United States was a party, and therefore that plaintiffs were not required to comply with applicable *Touhy* regulations, because the United States voluntarily substituted itself for named defendants in the action in which the subpoena was issued); *Bobreski v. E.P.A.*, 284 F.Supp.2d 67, 78–79 (D.D.C. 2003) (holding that the Secretary of Labor was not a party under applicable *Touhy* regulations because the Secretary was not a party to the administrative proceeding in which the subpoena was issued).

Nor does Gillette have grounds to argue that the regulations upset the separation of powers by allowing an executive agency to intrude on the proper function of the judiciary. Gillette refused to submit the requested summary to the USAO, so the USAO never made a determination as to the appropriate scope of production. As the Supreme Court held in *Touhy*, the "constitutionality of the Attorney General's exercise of determinative power as to whether or on what conditions … he may refuse to produce government papers under his charge must await a factual situation that requires a ruling."[45] Nevertheless, contrary to Gillette's claim, the *Touhy* regulations prevent the District Court from wading into the DOJ's internal record-keeping processes and thus maintain the separation of powers. Gillette also could have challenged the scope of production under the APA, so the judiciary ultimately retained authority over the production of evidence in his proceeding.

### iii.

Gillette also argues that he was not required to comply with the *Touhy* regulations because they violate the APA.[46]

---

[45] 340 U.S. at 469.

[46] Separately, Gillette argues that the *Touhy* regulations violate the Regulatory Flexibility Act (RFA) and Executive Order (EO) 12,291. However, the RFA applies only if an agency "is required . . . to publish a general notice of proposed rulemaking." 5 U.S.C. § 603. As discussed *infra*, rules that govern agency organization, procedure, and practice are exempt from the notice-and-comment process under 5 U.S.C. § 553(b)(A), so the RFA does not apply here. EO 12,291 is likewise inapplicable because the DOJ implemented its *Touhy*

Gillette's arguments rest on the fact that the regulations were not the product of notice-and-comment rulemaking. However, rules that govern an agency's internal organization, procedure, or practice are exempt from notice-and-comment requirements under the APA.[47] The DOJ's *Touhy* regulations plainly govern its internal procedures and practices related to the disclosure of documents. Moreover, the regulations were adopted pursuant to 5 U.S.C. § 301, construed by the Supreme Court as a "housekeeping statute" which authorizes only such procedural rules.[48]

Gillette responds that the *Touhy* regulations are substantive and therefore subject to notice-and-comment requirements because they required him to submit a summary of the information he sought and its relevance to his habeas proceedings. Not so. Procedural rules do not "shift the rights or interests of the parties" who appear before the agency, "although they may change the way in which the parties

---

regulations before the EO was effective. *Compare* 45 Fed. Reg. at 83,208 (Effective Dec. 4, 1980), *with* 46 Fed. Reg. 13,193 (Effective Feb. 17, 1981).

[47] 5 U.S.C. § 553(b)(A).

[48] *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979). Gillette cites *Chrysler Corp.* for his claim that the *Touhy* regulations violate the APA because they "imply that the DOJ may be entitled to withhold information to some extent beyond that which is privileged." Br. at 30. The regulations make no such implication. They merely establish a process for the DOJ to review and respond to requests for documents and testimony, a process with which Gillette refused to comply.

present themselves to the agency."[49]  The *Touhy* regulations merely prescribe the manner in which Gillette was to present his document request to the USAO.[50]  It does not matter that the regulations "apply externally" in that they require parties, like Gillette, to take certain steps in order to receive the documents that they request.[51]  Procedural regulations are not subject to the notice-and-comment requirement simply because they have some effect on external parties.[52]

Nor are the *Touhy* regulations arbitrary and capricious. To evaluate this claim, we ask whether the regulations are a reasonable exercise of agency authority under 5 U.S.C. § 301.[53]  It is reasonable for the DOJ to require parties to submit a summary of any documents sought because its allows the DOJ to assess (1) the extent to which it must comply with

---

[49] *Chao v. Rothermel*, 327 F.3d 223, 227 (3d Cir. 2003); *see also SBC Inc. v. F.C.C.*, 414 F.3d 486, 498 (3d Cir. 2005).

[50] *See Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 349–50 (4th Cir. 2001) ("A rule that simply prescribes the 'manner in which the parties present themselves or their viewpoints to the agency' does not alter the rights or interest of the parties." (quoting *JEM Broad Co. v. FCC*, 22 F.3d 320, 326 (D.C. Cir. 1994)).

[51] Br. 30.

[52] *See e.g.*, *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 640–41 (D.C. Cir. 2002) (holding that the State Department's "cut-off" policy for FOIA requests was procedural and thus not subject to notice-and-comment requirements); *JEM Broad. Co.*, 22 F.3d at 327 (holding that the FCC's "hard look" rules were procedural, even though they limited the ability of FCC license applicants to amend their applications).

[53] *See Pub. Citizen*, 276 F.3d at 640.

a party's request[54] and (2) how the party might narrow their request if it is not granted in full.[55] The *Touhy* regulations are also consistent with the statute's purpose of "centralizing determination as to whether subpoena duces tecum will be willingly obeyed or challenged."[56]

**B.**

Finally, Gillette appeals the District Court's denial of his motion for appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B). That section provides for appointment of counsel where an individual seeks relief pursuant to 28 U.S.C. §§ 2241, 2254, or 2255 and "the United States magistrate judge or the court determines that the interests of justice so require."[57]

Gillette argues that he is entitled to appointed counsel because he requires counsel to effectively present his arguments, has met the indigency requirement, and raises non-frivolous arguments. But Gillette does not seek relief under §§ 2241, 2254, or 2255 in this action.[58] Rather, this dispute was before the District Court, and is now before us, for the limited purpose of resolving the USAO's motion to quash. The

---

[54] *See* 28 C.F.R. § 16.26.

[55] *See* 28 C.F.R. § 16.24.

[56] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

[57] 18 U.S.C. § 3006A(a)(2).

[58] Moreover, even if we look beyond the instant action to Gillette's pending habeas action, he seeks relief pursuant to 5 V.I. Code Ann. tit. 5, § 1303, rather than any of the statutes enumerated in 18 U.S.C. § 3006A(a)(2)(B).

District Court therefore did not err by denying Gillette's request for appointment of counsel.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.